[Sac. No. 2985. In Bank.—November 29, 1919.]

RAY L. RILEY, as Real Estate Commissioner etc., Petitioner, v. JOHN S. CHAMBERS, as Controller, etc., Respondent.

[1] CONSTITUTIONAL LAW—REGULATION OF LAWFUL AND USEFUL OCCUPATION—POLICE POWER.—While the right to engage in a lawful and useful occupation cannot be taken away under the guise of regulation, such an occupation may be subjected to regulation in the public interest even though such regulation involves in some degree a limitation upon the exercise of the right regulated.

[2] REAL ESTATE BROKER'S ACT—LICENSE—EVIDENCE OF GOOD CHARACTER—VALID REQUIREMENT.—The act of the legislature of 1919 (Stats. 1919, p. 1252) making it unlawful for any person or corporation to act as a real estate broker or real estate salesman without first obtaining a license is not invalid because it requires that persons desiring to engage in such business shall furnish evidence of good moral character, since the occupation of a real estate agent is of a fiduciary character.

[3] ID.—POWER OF REAL ESTATE COMMISSIONER NOT ARBITRARY.—Such act is not invalid, as giving the real estate commissioner the arbitrary power to refuse a license, since his discretion is not arbitrary, as there must exist facts which reasonably justify his conclusion that the applicant is not of good character and reputation.

[4] ID.—REVOCATION OF LICENSES BY COMMISSIONER—VALID PROVISIONS OF ACT NOT AFFECTED BY.—Such act is not invalid because of the provision giving the commissioner power to suspend or revoke a license for certain dishonest acts after a hearing of the charges, for even if such provision is invalid, it is but a detail and not an essential part of the act, and separable from the balance without affecting the substantial accomplishment of the purpose for which the act was passed.

[5] ID.—REVIEW OF COMMISSIONER'S ACTION—ABUSE OF DISCRETION—BURDEN OF PROOF—VALID PROVISIONS OF ACT NOT AFFECTED BY.—The provision of the act that on a review by the courts of the commissioner's action in suspending or revoking any license, the burden of proof is upon the licensee to show an "abuse of discretion" on the part of the commissioner, is but a part of the general provision giving the commissioner power to suspend or revoke licenses, and even if invalid, the provision is plainly separable from the balance of the act and does not affect its validity.

[6] ID.—COMPENSATION OF EMPLOYEES—DISCRETION OF COMMISSIONER—VALID PROVISION.—Such act is not invalid because the salaries

of the deputies of the commissioner are not fixed, but their amount left to the discretion of the commissioner.

[7] ID.—COLLECTORS OF RENTS—CLASSIFICATION AS BROKERS—VALID PROVISION.—The act is not unreasonably discriminatory because it classes collectors of rents as brokers.

[8] ID.—EXCEPTION OF PERSONS HOLDING POWER OF ATTORNEY FROM OWNER—VALID PROVISION.—The act is not discriminatory in excepting persons holding a duly executed power of attorney from the owner, since by such a power of attorney is meant written authority to act for and in the place of the principal in consummating the transaction as distinguished from merely negotiating it.

[9] ID.—BROKERS AND SALESMEN—REQUIREMENTS OF DIFFERENT FEES AND CERTIFICATES OF CHARACTER—REASONABLE DISCRIMINATION.— The provisions of the act requiring brokers to pay an annual license fee of ten dollars and salesmen of two dollars, and requiring the former to furnish certificates of character by two land owners, and the latter to furnish certificates by their employers, are not unreasonable discriminations.

[10] ID.—EXCEPTION OF TRUSTEES SELLING UNDER DEED OF TRUST— VALID PROVISION.—The act is not discriminatory in excepting trustees selling under a deed of trust, as trustees, whether selling or doing something else, do not come within the purview of the act.

[11] ID.—OFFICERS OF CORPORATION REAL ESTATE BROKER—LICENSE TO ACT AS BROKERS ESSENTIAL.—Officers of a corporation licensed to do business as a real estate broker may not act as brokers or salesmen without being subject to the requirements of the act.

APPLICATION for Writ of Mandamus to require the state controller to audit warrant for expenses of real estate commissioner. Granted.

The facts are stated in the opinion of the court.

Max J. Kuhl for Petitioner.

James L. Atteridge and Wesley E. Marten for Respondent.

Fry & Wood, *Amici Curiae.*

OLNEY, J.—The legislature of 1919 passed an act (Stats. 1919, p. 1252), purporting to regulate the business of acting as a real estate broker or salesman in California, creating a state real estate department with an official having the title of real estate commissioner at its head, and pro-

viding for the payment of the expenses of the department out of a certain fund in the state treasury. The petitioner, Ray L. Riley, was appointed real estate commissioner, incurred certain expenses on account of his department, and sought their payment out of the state treasury in the manner provided by the act. The respondent, the state controller, refused to authorize such payment, having apparently some doubt as to the constitutional validity of the act. Thereupon the commissioner sought to obtain a writ of mandate from this court to compel the controller to authorize the payment of the expenses in question. A demurrer was interposed to the petition for a writ, and the matter has been submitted to us upon this demurrer. The only points raised are as to the constitutionality of the act.

The act makes it unlawful for any person or corporation to act as a real estate broker or real estate salesman without first obtaining a license. A real estate broker is defined as any "person, copartnership, or corporation who, for a compensation, sells, or offers for sale, buys, or offers to buy, or negotiates the purchase or sale or exchange of real estate, or who, for compensation, negotiates loans on real estate, leases, or offers to lease, rents, or places for rent, or collects rent from real estate, or improvements thereon, for others as a whole or partial vocation." A real estate salesman is defined as one who for compensation and as a whole or partial vocation is employed by a real estate broker to do any of the things specified in the definition of a broker.

The act provides that it shall not apply to anyone acting in regard to his own property, to anyone "holding a duly executed power of attorney from the owner," to any attorney at law acting in his professional capacity, or to any receiver, trustee in bankruptcy, or trustee selling under a deed of trust. It also provides that a single act of selling, etc., shall make the person a real estate broker.

The required license is to be issued by the real estate commissioner upon written application, accompanied, in the case of a broker, by the recommendation of two real estate owners certifying that the applicant is "honest, truthful and of good reputation," and in the case of a salesman by a similar recommendation and certification by his employer. The act does not in so many words authorize the commissioner to refuse a license if he is not satisfied as to the

honesty, truthfulness, and good reputation of the applicant, but such authority is necessarily implied. For the license a broker is required to pay an annual fee of ten dollars and a salesman one of two dollars.

The commissioner is given power to suspend or revoke any license for dishonest dealing by the licensee after the presentation of written charges against him and an opportunity afforded him to be heard. The decision of the commissioner suspending or revoking any license is made subject to review by the courts in accordance with the provisions of the code for the issuance of writs of review, the action of the courts, however, being limited by the act to determining whether there has been "an abuse of discretion" on the part of the commissioner.

Anyone acting as real estate broker or salesman in violation of the act is made liable to punishment, if an individual, by a fine not exceeding two thousand dollars or by imprisonment not exceeding two years, or by both fine and imprisonment, and if a corporation, by a fine not exceeding five thousand dollars.

A real estate department is, as we have said, created with the real estate commissioner as its head. The latter is authorized to employ such deputies and assistants as he may need and fix their compensation. No limit is placed on his discretion in this respect, other than the practical limit incident to the fact that all the expenses of the department, including the five thousand dollar salary of the commissioner himself, are payable only out of a certain fund in the state treasury, which, in turn, is made up solely of fees collected by the department.

Such being the general scope and outline of the act, a number of objections are made to it. The most important of these is that the act is an unreasonable interference with the right of every citizen to engage in a legitimate and useful occupation. This objection is fundamental, and if sound, the whole act falls, since its sole primary purpose is to hedge about the pursuit of the vocation of a real estate broker or salesman with certain restrictions. That such vocation is a legitimate and useful one cannot be controverted. [1] Nor can it be controverted that the right to engage in a lawful and useful occupation cannot, in effect, be taken away under the guise of regulation. On

the other hand, it is equally true that a lawful and useful occupation may be subjected to regulation in the public interest, and that all regulation involves in some degree a limitation upon the exercise of the right regulated. The test is whether or not the limitation imposed is really by way of regulation only, is one whose purpose and effect go no further than throwing reasonable safeguards in the public interest around the exercise of the right. If the limitation is of this character, its imposition is a proper exercise of the police power resident in the legislature, and whose exercise is one of the latter's most important functions.

Now the single primary purpose of the act is to require of real estate brokers and salesmen that they be "honest, truthful and of good reputation." All of its provisions, including the requirement of a license, are but incidental to this single purpose and designed to accomplish it. In the nature of things no amount of regulation can insure the possession of those qualities by everyone engaged in the business, and it is easy to conceive of regulations which would have this as their sole object and yet be so extreme as practically to take away the general right of engaging in the business. Two questions, therefore, arise regarding such regulations as those here imposed; First, is the general limitation that only persons of good character may engage in the particular business a safeguard which may reasonably be required as to that business? And, second, are the specific limitations prescribed to accomplish the general purpose no more than reasonable therefor?

As to the second question, there is no controversy in the present case, and in fact there could not well be any. It is clear that if it is permissible to require some assurance of good character, the specific limitation imposed for that purpose by this act that everyone seeking to engage in the business shall file a written application accompanied by a certificate of good character, is no more than reasonable. The controversy is over the first question, whether or not the general limitation that only persons of good character should engage in the business is a permissible one. The position of counsel opposing the validity of the act is that "To prevent a person engaging in a lawful and innocuous business or occupation because of his moral character or

CLXXXI Cal.—38

reputation is in our opinion an arbitrary invasion of private rights and liberties." This may be true of some businesses and vocations. It is certainly not true of all. Where the occupation is one of which it can be fairly said that those pursuing it should have certain particular qualifications, it is within the power of the legislature to exact reasonable assurances of those pursuing the occupation that they do possess these qualifications. The most familiar illustrations of this are the qualifications of preliminary training and learning required of professional men such as lawyers, physicians, dentists, pharmacists and architects. Where the occupation is one wherein those following it act as the agents and representatives of others and in a more or less confidential and fiduciary capacity, it certainly can be fairly said that those pursuing it should have in a particular degree the qualifications of "honesty, truthfulness and good reputation." The occupation of a real estate agent is of just this sort. He acts for others and in a more or less confidential and fiduciary capacity. As a result there is particularly required of him for the proper discharge of his duties honesty and truthfulness, and the legislature has the right to require some assurance of their possession by everyone following the occupation. One strong assurance of their possession is a good reputation.

[2] No extended discussion of this point is necessary. It is definitely settled by the supreme court of the United States in *Hall* v. *Geiger-Jones Co.*, 242 U. S. 539, [Ann. Cas. 1917C, 643, 61 L. Ed. 480, 37 Sup. Ct. Rep. 217]. The state of Ohio had passed a law requiring every dealer in securities, such as a bondhouse, to obtain a license from the state superintendent of banks. As a condition of obtaining such a license the dealer was required to establish his good repute to the satisfaction of the state official. The same attack was made upon the law by reason of this provision as is now made upon the California law, but its validity was upheld. So far as this point is concerned, there is certainly no difference between the occupation of a dealer in securities and that of a real estate agent. In fact, the relation of the latter to his client is of a more fiduciary character than that of the security dealer to his customer.

[3] Another and cognate objection is that the act is invalid because it gives the commissioner arbitrary power to determine who may have a license and, therefore, who may lawfully engage in the real estate business. If such arbitrary power were in fact conferred by the act, it may well be that the objection would be good. But such power is not conferred either in the granting of licenses or in their revocation. An applicant for a license is entitled to it if he presents the required recommendation and certificate, unless the commissioner is not satisfied that he has, in fact, the qualifications of honesty, truthfulness, and a good reputation. In other words, the commissioner has no discretion unless he doubts the possession by the applicant of those qualifications which it was the purpose of the act to assure.

But it may be said that the power of the commissioner to refuse a license, if he is not satisfied as to the character of the applicant practically gives him arbitrary power as he alone can determine whether he is satisfied or not. This, however, is not true. While the commissioner has the power to refuse a license if he is not satisfied as to the character of the applicant, his discretion is not arbitrary. There must exist facts which reasonably justify his conclusion that the applicant is not of good character and reputation. If such facts do not exist, it is his duty to issue the license and this duty can be enforced by the courts.

No extended discussion of this objection is necessary, since here, also, the matter is definitely settled by *Hall* v. *Geiger-Jones Co., supra.* With this such decisions as *Los Angeles* v. *Hollywood Cemetery Assn.,* 124 Cal. 344, [71 Am. St. Rep. 75, 57 Pac. 153], *Schaezlein* v. *Cabaniss,* 135 Cal. 466, [87 Am. St. Rep. 122, 56 L. R. A. 733, 67 Pac. 755], and *La Junta* v. *Heath,* 38 Colo. 372, [88 Pac. 459], are not in conflict, since the acts or ordinances involved in those cases conferred the power of granting or refusing the right requested without any specification of the conditions upon which it should be granted or refused. The power conferred was both uncontrolled and unguided.

A third objection is that the act confers judicial powers upon the commissioner, a nonjudicial official. This objection is founded upon the fact that he is given the power

after a hearing or opportunity for a hearing to suspend or revoke any license in case the licensee is guilty of any one of a number of acts, all of which come within the general designation of dishonest dealing. But whether the conferring of this power upon the commissioner is constitutionally valid or not, we need not determine at this time and we express no opinion. [4] It is a sufficient answer to the objection, so far as this proceeding goes, that this portion of the act is not directly involved, and that it plainly is but a detail and not an essential part of the act and is separable from the balance without affecting the substantial accomplishment of the purpose for which the act was passed, so that even if invalid, its invalidity would not render the whole invalid and in particular would not affect the question involved here, the right of the commissioner to have the expenses of his office paid in the manner provided.

The remaining objections to the act are that in a number of different respects it makes unreasonable discriminations and is, therefore, special legislation. Two such alleged discriminations are pointed out by counsel for the respondent. The first is the provision that on a review by the courts of the commissioner's action in suspending or revoking any license, the burden of proof is upon the licensee to show an "abuse of discretion" on the part of the commissioner. [5] This provision is but a part of the general provision giving the commissioner power to suspend or revoke licenses, and what we have just said in regard to the objection to this general provision applies with double force to this part of it. Even if invalid, as to which we express no opinion, the provision is plainly separable from the balance of the act, and does not affect its validity.

[6] The second alleged discrimination is that the salaries of the deputies and employees of the commissioner are not fixed, but their amount is left to the discretion of the commissioner. In many cases it is advisable, if not necessary, that the compensation of employees, even of public employees, be left to the discretion of the official in charge of the department where they are employed and who is responsible for the efficiency of that department. It cannot be said that conferring this power in one case

and not in others is the making of an unreasonable distinction.

The remaining objections—all because of alleged unreasonable discriminations—are made by counsel appearing as *amici curiae*: The first of these is that the act makes a difference between collectors of rents and collectors of other obligations. Those engaged in collecting rents and not otherwise engaging in the real estate business might well have been omitted from the operation of the act. [7] But the business of collecting rents is so closely connected with the real estate business generally, and it is so usual for the first to be carried on as a part of a general real estate business, that we cannot say the legislature was not justified in classifying them together and thereby making a distinction between collectors of rent and other collectors.

The second objection of *amici curiae* along this line is that an unreasonable distinction is made when the act excepts "persons holding a duly executed power of attorney from the owner." The soundness of this objection depends upon what is meant by a "power of attorney:" Power of attorney to do what? The act does not say. Any written authority by one man to act for another may be said to be a power of attorney and the argument of *amici curiae* is that as used in the act in question it must include authority to act as broker merely, to negotiate sales, leases or other transactions in real property, as distinguished from authority to consummate the transaction. If this be so they argue, in effect, and argue truly, any broker, while continuing to act solely as a broker, may yet escape from the restrictions of the act by always securing written authority, and there is no reason why any distinction should be made between brokers who always act under written authority and those who do not, so far as subjecting them to regulation is concerned.

Such a construction of the act, however, is not a reasonable one. It would not only render the act invalid, but even if it did not do this, it would practically render it ineffective, since, as has been said, any broker could secure escape from its provisions merely by being careful to secure written authority in every case. [8] A much more natural construction is that by power of attorney is meant written authority to act for and in place of the principal

in consummating the transaction as distinguished from merely negotiating it. This construction removes the objection of unreasonable discrimination, for such an agent is much more than a broker and there is nothing unreasonable in not applying to him the regulations applicable to brokers.

[9] A third distinction urged by *amici curiae* as unreasonable is that between brokers and salesmen. The discriminations between the two made by the act are that brokers pay an annual license fee of ten dollars and salesmen of two dollars, and the former is required to furnish certificates of character by two land owners, while the latter furnish certificates by their employers. But certainly a larger fee and a different certificate may reasonably be exacted from a broker engaged in business for himself than are exacted from a salesman working for another.

[10] The fourth point of *amici curiae* is that trustees selling under a deed of trust are excepted, and no exception is made of trustees doing anything else than selling, such as leasing or renting, or collecting rents. The reply is that trustees, whether selling or doing something else, do not come within the purview of the act. The express exception of trustees selling under a deed of trust adds nothing and the act would be the same if it made no mention of trustees.

[11] The fifth point made by *amici curiae* is that officers of a corporation licensed to do business as a real estate broker may act as brokers or salesmen without being subject to the requirements of the act. Suffice it to say that we do not so read the act.

There are a number of other objections made, but inasmuch as counsel themselves say that they are made not so much to impeach the validity of the act as to show its injustice, a consideration addressable to the legislature but not to us, no discussion of them is required.

It is ordered that the writ issue as prayed.

Shaw, J., Wilbur, J., Lennon, J., Angellotti, C. J., and Lawlor, J., concurred.

Rehearing denied.

All the Justices concurred.