[Civ. No. 2284.   Third Appellate District.—June 17, 1921.]

# G. F. HOUSTON, Respondent, v. C. A. WILLIAMS, Appellant.

[1] BROKER'S COMMISSIONS — ACTION TO RECOVER — POSSESSION OF LICENSE—TIME.—Under the Real Estate Brokers' Act (Stats. 1919, p. 1252), it is unlawful for anyone to engage in the business of a real estate broker without having secured a license, but he is not precluded from recovering compensation for his services if he had such license at the time his cause of action arose, although his contract may have been executed prior to that time when he had no license.

[2] ID.—PLEADING—AVERMENT OF CONTRACT—AUTHORITY—INFERENCE. In an action for a broker's commission for the sale of real estate, the plaintiff is not required to allege specifically that he had a license at the time he entered into the contract of employment, but from the averment in his complaint that on a certain date he and defendant entered into such contract the inference would follow that he had the capacity and the lawful authority to enter into such an undertaking, and it would be incumbent upon the defendant to challenge it by denial if he desired to present such issue.

[3] ID.—PRODUCTION OF PURCHASER—FINANCIAL ABILITY—EVIDENCE.— In this action to recover a broker's commission for the sale of real estate, the evidence was sufficient to show that the purchaser produced by plaintiff was financially able to pay for the property of defendant as required.

[4] ID. — PRODUCTION OF PURCHASER BY BROKER — PRIOR SALE BY OWNER—RIGHT TO COMMISSION.—Where the owner of real estate in writing appoints a broker as his exclusive agent to sell or exchange said property at a given price and upon certain specified terms and agrees to sell said property to any purchaser able and willing to purchase the same upon such terms, and such writing further provides, "This authorization is to continue for the period of ninety days," the broker is entitled to his commission when, within the life of such authorization, he presents to the owner a purchaser ready, able, and willing to purchase at the price and upon the terms specified by the owner, notwithstanding that prior thereto the owner, through his own efforts, had obtained a purchaser.

1. Failure to procure license as affecting broker's right to recover commission, notes, 5 Ann. Cas. 897; Ann. Cas. 1912D, 378.

4. When broker is entitled to commission, notes, 28 Am. St. Rep. 546; 139 Am. St. Rep. 2?5.

APPEAL from a judgment of the Superior Court of Madera County. George A. Sturtevant, Judge Presiding. Affirmed.

The facts are stated in the opinion of the court.

Fee & Ring for Appellant.

Conley & Conley for Respondent.

BURNETT, J.—The action was for a broker's commission for the sale of real estate and the plaintiff had judgment, from which the appeal is taken. The cause of action is set forth in identical phraseology in two counts except for the provisions of paragraph 3 in each count. Said paragraph in the first count is as follows: "That thereafter, and prior to the time limited for the expiration of said contract, plaintiff by his own efforts procured one, G. A. Lombardi, as a purchaser of said real property, at the price and upon the terms and conditions fixed by said contract (Exhibit 'A'). That on or about the 10th day of January, 1920, plaintiff produced the said G. A. Lombardi before defendant herein, at and upon the said real property of defendant; that the said G. A. Lombardi, in the presence of plaintiff, did then and there offer to said defendant to purchase said real property at the price and upon the terms and conditions fixed by said contract (Exhibit 'A'). That at the time of making said offer, the said G. A. Lombardi was ready, able and willing to purchase said real property at the price and upon the terms and conditions fixed by said contract (Exhibit 'A')."

The corresponding paragraph in the second count is substantially the same, with the addition of the following allegation: "That the defendant then and there refused, and has ever since refused to sell the said property to the said G. A. Lombardi, upon the terms and conditions and at the price fixed by said contract, (Exhibit 'A'), or otherwise, or at all."

The first count rests upon the theory that the broker obtained a purchaser for the property and was therefore entitled to his commission. The second count was designed, so respondent claims, to meet the requirement of the rule that

"when the broker in good faith finds a purchaser within the period allowed by the terms of the written contract of employment, and prior to the revocation of his authority, places the matter in such a position that success is practically certain and immediate, or has in good faith expended money and effort in seeking a purchaser, the revocation by the vendor of the broker's authority (by sale to another or otherwise), and the termination of his agency before the completion of the sale, against the express provisions of the contract of employment does not deprive the broker of his right to his commission, but the principal is liable therefor, if the purchaser is ready, able and willing to pay the purchase money before the expiration of the period named in the agency contract."

The first count is probably broad enough to cover either theory of plaintiff, but the second count could obviously do no harm.

The trial judge found that all the allegations of the amended complaint were true and also, "That the said real property was sold by defendant to W. S. Ricketts of Fowler, California, but that said sale took place after plaintiff had produced before defendant one, G. F. Lombardi, as a purchaser ready, able and willing to purchase and who offered to purchase said real property in accordance with the terms and conditions, and at the price named in said contract."

The contract of agency was as follows:

"The undersigned, G. F. Houston, hereby agrees, during the life of this agreement, to endeavor to sell or exchange the property described on the reverse side of this card.

"In consideration thereof, I hereby appoint G. F. Houston my exclusive agent to sell or exchange for me said property, and to receive deposit on the same.

"I agree to sell said property to any purchaser able and willing to purchase the same for the price and upon the terms stated on the reverse side of this card, or for any less price or different terms hereafter authorized by me.

"I agree to furnish an abstract or certificate showing merchantable title in me to date of sale, and to convey title by good and sufficient deed of grant or contract of sale. Purchaser pays for all lumber for our house, also all other materials for this price.

"Should G. F. Houston, either personally or through his agents, be instrumental in obtaining a purchaser to whom the owner of this property shall sell or contract to sell said property during life of this agreement, or within six months after the expiration thereof, I agree to pay G. F. Houston five per cent of the selling price as commission for selling the same.

"Any deposit retained by me for failure of a purchaser to make a further payment shall be equally divided between my said agent and myself.

"This authorization is to continue for the period of 90 days."

On the back of said contract the terms of the sale appear as follows: "40 acres, $9500. Name, C. A. Williams. Located 5 miles of Madera on State Highway Ave. Road, Sec. 4—Purchaser pays for all lumber and material for same on new house . . . Terms: $9500. How payable—1000 pr. annum. And assign contract with Frank Hope & Wife for $5000 at 7 per cent."

[1] 1. Appellant contends that the commission contract is void by reason of the fact that plaintiff at the time said contract was executed had no license to act as a real estate broker as required by the statute for the regulation of such brokers, approved May 27, 1919 (Stats. 1919, p. 1252). Section 1 of said act provides: "It shall be unlawful for any person, copartnership or corporation to engage in the business, or act in the capacity of a real estate broker, or a real estate salesman within this state without first obtaining a license therefor." Section 2 of said act defines a real estate broker and it is not disputed that plaintiff was such broker. Section 17 of said act makes the failure to take out a license by one engaged in the business punishable "by a fine of not to exceed two thousand dollars, or by imprisonment in the county jail or state prison for a term not to exceed two years, or both such fine and imprisonment."

In *Wood* v. *Krepps*, 168 Cal. 382, [L. R. A. 1915B, 851, 143 Pac. 691], the rule in such cases is stated as follows: "When the object of the statute or ordinance in requiring a license for the privilege of carrying on a certain business is to prevent improper persons from engaging in that particular business, or is for the purpose of regulating it

for the protection of the public or in the interest of public morals, health, or police, the imposition of the penalty amounts to a prohibition against doing the business without a license, and a contract made by an unlicensed person in violation of the statute or ordinance is invalid." However, it was held in that case that the ordinance in question was solely for the purpose of yielding a public revenue, and therefore contracts made in the course of the business by one who had not obtained a license were valid. The purpose of the act in question herein was decided by our supreme court in *Riley* v. *Chambers*, 181 Cal. 589, [8 A. L. R. 418, 185 Pac. 855], to be primarily to require that real estate brokers and salesmen be "honest, truthful, and of good reputation." It was designed, in other words, to protect the public against unscrupulous operators and not principally to secure revenue. It would seem to follow that a contract having in view the performance of any of the acts recited in said statute, if said contract was executed by one to whom no license has been issued, would be invalid, unless there is something in the act itself which operates to limit or modify said rule. We think such limitation is found in section 20 of the act providing that "no person, copartnership or corporation engaged in the business or acting in the capacity of a real estate broker or a real estate salesman within this state shall bring or maintain any action in the courts of the state for the collection of compensation for the performance of any of the acts mentioned in section two thereof without alleging and proving that such person, copartnership or corporation was a duly licensed real estate broker or real estate salesman at the time the alleged cause of action arose." Manifestly the legislature herein undertook to prescribe an essential condition of recovery but limited its operation to the time when the cause of action arose. By implication any earlier period was excluded. It is a reasonable construction of the act to hold that it is unlawful for anyone to engage in the business of a real estate broker without having secured a license, but he is not precluded from recovering compensation for his services if he had such license at the time his cause of action arose, although his contract may have been executed prior to that time when he had no license. Herein, manifestly, the cause of action arose when

plaintiff obtained a purchaser for the property and it is not disputed that then he had the proper license, and it was so alleged in the complaint.

[2] At any rate, there is nothing in the statute to require the pleader to allege specifically that he had the license at the time he entered into said contract, and from the averment "that on the twenty-third day of October, 1919, plaintiff and defendant entered into a certain contract in writing, a copy of which is attached to and made a part of this complaint," the inference would follow that plaintiff had the capacity and the lawful authority to enter into such an undertaking, and it would be incumbent upon defendant to challenge it by denial if he desired to present such issue. Especially should this position be taken in view of the failure of defendant to make any such point in the court below. His contention as to the sufficiency of the complaint was stated as follows: "The contract in question, which is attached to the complaint and made an exhibit thereto gives to the plaintiff in this action an exclusive agency to sell the property of the defendant for a certain time. The contract in question, however, does not give to Mr. Houston the exclusive right to sell that property and in the absence of such condition in the contract the owner himself, of course, may sell the property through his own efforts, and if he does so without the aid of Mr. Houston, Mr. Houston is not entitled to a commission. This complaint is for the sale of the property or for finding a buyer ready, able, and willing to buy. I believe under such condition the complaint should allege that at the time Mr. Houston procured a buyer ready, able and willing to buy that the owner himself had not sold through his own individual efforts." When asked by the court if that was the feature that appellant desired to present by the demurrer he replied, "that was the main feature."

The same attitude was maintained throughout the trial, and no suggestion was made that the complaint should have contained said allegation in reference to the license. Under such circumstances any doubt as to the sufficiency of the complaint in the respect indicated should, of course, be resolved against the appellant. (*Cushing* v. *Pires,* 124 Cal. 663, [57 Pac. 572].)

[3] 2. It is contended that the evidence is insufficient to show that the purchaser produced by plaintiff was financially able to pay for the property as required. The parties agreed to add $500 to the price to cover lumber on the premises, which had been furnished by appellant, and Mr. Lombardi, the proposed purchaser, seems to have understood that he was required to pay the entire sum of $10,000 in cash when the deed was executed. Upon the theory that the contract so provided, the court was justified in concluding that he was able to meet the demand. He had $1,813.15 in cash in bank, $600 in bonds, $6,000 on a one day note of the California Associated Raisin Company, and a $6,000 interest in a land contract. The sufficiency of this last asset only is questioned by appellant. But, as pointed out by respondent, the Bank of Italy had offered to lend Lombardi the sum of $5,000 on this security, and we think it is an entirely reasonable inference that Lombardi was in a position to pay the whole amount if appellant had not declined to sell to him. The facts of *Mattingly* v. *Pennie,* 105 Cal. 514, [45 Am. St. Rep. 87, 39 Pac. 200], and *Merzoian* v. *Kludjian,* 183 Cal. 422, [191 Pac. 673], made an entirely different showing.

Moreover, the contract required the payment of only $1,000 immediately and the balance in annual payments of $1,000. This the terms of the contract leave in no doubt whatever. And though Lombardi was willing to make the entire payment at once and the parties may have discussed the question as though the contract so provided, it cannot be controverted that it was sufficient for the purchaser to be able to meet the terms upon which the owner and the agent had agreed.

[4] 3. The third point rests upon the claim that the owner reserved the right to make the sale himself without being liable for a commission. Herein, a question of fact may first be considered. It is not disputed that a sale to another party was made by appellant but the controversy is as to whether it was prior or subsequent to the procurement by the agent of a purchaser. That said sale was not fully consummated until after plaintiff had produced Lombardi cannot be seriously questioned. Appellant, however, claims that it was only necessary for him to secure another purchaser who was ready, able, and willing to purchase in

order to relieve him of liability; in other words, that the right and privilege he reserved was similar to that conferred upon the agent and that he actually secured such purchaser before Lombardi was produced. As to the fact, the defendant testified: "On the day that Mr. Houston came there, on the tenth day of January, I had already sold the property to a man by the name of Ricketts, or at least, Mr. Ricketts was on the property at that time and had told me prior to the time Mr. Houston arrived that he would take the place." It was not disputed by plaintiff that, when he with Lombardi arrived at the place, Ricketts was there, and it must be accepted as a fact that said sale was agreed upon, though no deposit had been made nor had any instrument in writing been executed. But there can scarcely be any doubt that, if the power to sell without liability was reserved by the owner, it included the right to secure a purchaser ready to buy and thereby avoid the payment of any commission.

As to the principle of law involved, appellant cites *Dreyfus* v. *Richardson,* 20 Cal. App. 800, [130 Pac. 161]; *Snook* v. *Page,* 29 Cal. App. 246, [155 Pac. 107]; *Roth* v. *Thompson,* 40 Cal. App. 208, [180 Pac. 656]; *California Land Security Co.* v. *Ritchie,* 40 Cal. App. 246, [180 Pac. 625]; *Faith* v. *Meisetschlager,* 45 Cal. App. 7, [187 Pac. 61]. In the first of these it is said: "We attach little importance to the fact that defendant, without other consideration than the mutual covenants implied in the contract, made plaintiff her sole agent for an indefinite period. She not only had the right to revoke such agency at any time before he had secured a purchaser, since the agreement did not purport to give plaintiff an exclusive right of sale (*Golden Gate Packing Co.* v. *Farmers' Union,* 55 Cal. 606), and conceding that during the existence of the contract she was prohibited thereby from placing the property in the hands of another agent with authority to sell the same (*Dole* v. *Sherwood,* 41 Minn. 535, [16 Am. St. Rep. 731, 5 L. R. A. 720, 43 N. W. 569]), she as owner, however, could without revoking the contract negotiate the sale thereof or accept an offer to purchase the same."

The Snook case was to the same effect, the court saying that, "If it had been the intention to deprive the owner of the right to sell, or in case of such sale, to create a

liability for commissions, it could and, no doubt, would have been easily and clearly expressed.''

In the Roth case it was held that the evidence was sufficient to support the finding of the lower court that the broker did not produce a purchaser ready, able, and willing to buy the property, and in reference to the brokerage agreement it was said that, ''It cannot be construed as vesting in the plaintiff the exclusive right to sell the property. Indeed, it does not even go so far as to make him the exclusive agent for that purpose, nor does it specify any time during which his authority to sell should exist. Conceding it to be sufficient to have authorized him to sell the property, it is so phrased that the Thompsons were at liberty to terminate it at any time before he procured a purchaser able, willing, and ready to purchase on the terms stated therein. But, however this may be, it is clear, as stated, that the Thompsons had the right to sell the ranch without the assistance or intervention of the plaintiff.''

In the California Land Security Company case there was a similar brokerage agreement, and the same doctrine announced as to the right of the owner to sell before the broker had secured a purchaser, without being liable for a commission.

The Faith case goes further in upholding the right of the owner to sell without being liable for a commission than any of the other decisions. Therein the brokerage contract provided: ''I hereby appoint the Action Realty Company of Fresno my agent, with the *exclusive right* to sell the property,'' etc. However, the court held that, considered as a whole, the contract did not deprive the owner of the right to make a sale without any liability, the agent having failed to secure a purchaser.

Respondent claims that in the foregoing cases the broker never performed his contract but sought to recover a commission by reason of the sale made by the owner, whereas, herein ''Houston does not seek to recover a commission because of Williams' sale to Ricketts, but because Houston performed fully, within the time limited, by producing Lombardi as a purchaser ready, able, and willing to buy the real property under the terms and conditions and at the price fixed in the agency contract,'' and that the case falls within the rule announced in *Blumenthal* v. *Goodall*, 89

Cal. 251, [26 Pac. 906]; *Ropes* v. *John Rosenfeld's Sons,* 145 Cal. 671, [79 Pac. 354]; *Sill* v. *Ceschi,* 167 Cal. 699, [140 Pac. 949]; *Roth* v. *Moeller,* 31 Cal. App. Dec. 870, [see, also, 185 Cal. 415, 197 Pac. 62].

In the first of these it was held: "Where a broker, employed to sell land, in good faith finds a purchaser within the period allowed by the terms of the written contract of employment, and prior to the revocation of his authority places the matter in such a position that success is practically certain and immediate, the revocation by the vendor of the broker's authority and the termination of his agency before the completion of the sale, against the express provisions of the contract of employment, does not deprive the broker of his right to his commissions, but the principal is liable therefor, if the purchaser is ready and willing to pay the purchase money before the expiration of the contract period." In that case the contract of agency was as follows: "I hereby authorize Mr. L. Oesterreicher to sell blocks 899, 900, 901, 903, outside lands, for the sum of fifteen hundred dollars each; will allow him one hundred dollars as commissions for his services on each block. This contract to be in force for ten days from date hereof."

The decision was based upon the theory that the owner had impliedly bound himself not to prevent the agent from earning his commission within the ten days; in other words, if the agent secured a purchaser within that period he was entitled to his commission, regardless of what might be done by the owner to prevent such sale. It is significant that the court cites with approval the case of *Lane* v. *Albright,* 49 Ind. 279, "where the owner of the real estate sold it pending the negotiations of the agent in making a sale, and prior to the expiration of the time given by the owners to the agent, and where the agent within the time given did find a purchaser," and quotes from said decision the following: "The appellant performed all that he was required by the contract to do, and was prevented by the appellee from selling the land. The appellee disabled himself from carrying out the contract of sale made by the appellant. The fact that the appellee had authorized appellant to sell his land did not deprive himself of the power of selling it, but he could not thereby avoid his *liability to appellant.*" It is to be observed, also, that the

supreme court distinguished the earlier case of *Brown* v. *Pforr*, 38 Cal. 550, by stating that "the contract therein did not expressly stipulate that it shall remain in force thirty days, and the opinion of Justice Sanderson clearly intimates that if there had been a provision in the contract that it should remain in force for such length of time, the defendant would not have been permitted to prevent performance and escape without making compensation to the agent." Herein, it may be said that it is expressly provided that the agency "is to continue for the period of ninety days," and the only difference between this case and *Blumenthal* v. *Goodall* is in the manner of the revocation of the agency, it being herein by a sale to another purchaser and therein by an express notice that the owner revoked the authority of the agent and declined to proceed further in the consummation of the sale through him.

The Ropes case approves the Blumenthal decision, but holds that the agent had not found a purchaser within the time limit and therefore had not earned his commission.

These decisions are cited with approval in *Sill* v. *Ceschi, supra,* and it was said: "Since the authorization was for thirty days, a revocation within that period would not have been effectual, if plaintiff, prior to the attempted cancellation, had expended money and effort in seeking to find a purchaser."

In *Roth* v. *Moeller, supra,* it was held that the agent having carried out his agreement within the period prescribed to obtain the acceptance of a proposition to exchange properties could not be deprived of his commission by the withdrawal of the offer on the part of his principal.

However, a hearing was granted by the supreme court and a decision therein rendered by that tribunal on March 29th last. (*Roth* v. *Moeller,* 185 Cal. 415, [197 Pac. 62].) Therein as to revocation it was said: "A principal may, however, curtail his *right* of revocation by contracting not to revoke the authority for a definite time. If the principal does so contract, he still retains the power to terminate the agency and the termination cannot be prevented by the agent but a revocation of authority within the designated period renders the principal liable for damages for the violation of a legal right of the agent, just as in the case of any other breach of contract," citing cases. But

it was held that the contract of agency therein contained no provision that the authority of the agent should remain irrevocable for any period and that the case falls within the principle of *Brown* v. *Pforr, supra,* and not of that line of decisions of which *Blumenthal* v. *Goodall, supra,* is an example. The court concluded that either party was at liberty at any time to terminate the relation of agency and that, "since the plaintiff proved no services prior to the revocation entitling him to reimbursement, defendant was not liable for compensation under the contract or for the value of services rendered."

It is manifest from a consideration of the foregoing cases that the supreme court makes a vital distinction between the provision in a contract of agency wherein the owner promises to pay the agent a commission "*if* within a certain period" he obtains a purchaser· and a provision expressly authorizing him for a definite period to sell the property, and agreeing that the agency shall continue for that period. In the former instance the provision is construed as a limitation upon the authority of the agent, and in the latter upon the right of revocation by the owner.

Herein, not only does the contract expressly limit the right of revocation by the owner and the agent had obtained a purchaser within the prescribed period, but the case possesses an added feature, since evidence appears that, before the owner had any thought of selling to Ricketts, plaintiff had entered into negotiations with Lombardi for its purchase and had informed Williams that he had a proposed buyer. It is, indeed, a fair inference that the agent was in the midst of negotiations, "which were evidently and plainly approaching to success," and hence it would be just to apply the principle "that there was an implied contract on the part of the owner to allow a reasonable time for performance," and as full performance was prevented by the act of the owner, the agent had earned his commission. (*Blumenthal* v. *Goodall, supra.*)

Moreover, the owner expressly agreed to sell to a purchaser that might be obtained by the agent. Of course, he could not sell the property to such purchaser if he sold it to another. By selling to another within the prescribed period he necessarily violated this provision of the contract and was liable for the commission since the agent performed

his agreement. This provision is utterly inconsistent with the theory that the owner reserved the right to sell without being liable for compensation notwithstanding the agent may have obtained a purchaser.

We are satisfied the decision is right, and the judgment is affirmed.

Hart, J., and Finch, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 15, 1921.

All the Justices concurred, except Angellotti, C. J., and Wilbur, J., who were absent.