[S. F. No. 13122. In Bank.—October 30, 1930.]

HARRY F. DAVIS, Respondent, v. W. F. CHIPMAN, as Trustee, etc., Appellant.

W. C. Sharpsteen, Cushing & Cushing and William H. Gorrill for Appellant.

Fred L. Berry and Dozier & Kimball for Respondent.

CURTIS, J.—The defendant, as trustee under the last will and testament of Josephine A. Phelps, deceased, was on the twenty-fourth day of April, 1924, the owner of certain described real property situated in the county of San Mateo and comprising 1400 acres of land or thereabouts. On said last-named day, defendant gave to Thomas B. Dozier, Jr., an option to purchase said real property for the sum of $250,000, which said option is, in so far as the same is necessary for the purposes of this action, in the following words and figures:

"It is hereby agreed that I will sell and convey to you or your assignee, at any time within three (3) months from this date, unless previously sold or agreed to be sold, all of the property described in that certain agreement dated March 21st, 1923, made and entered into by and between myself, as Trustee of the Estate of Josephine A. Phelps, Deceased, under the terms of the Last Will and Testament of said Josephine A. Phelps, Deceased, the party of the first part, and California Homes Association, a Corporation duly and regularly organized and existing under and by virtue of the laws of the State of California, and having its principal place of business in the City and County of San Francisco, State of California, the party of the second part, and recorded in Volume 75, at page 492, Official Records of San Mateo County, excepting therefrom such portions thereof as have been sold since the above date, for the total sum of Two Hundred Fifty Thousand Dollars ($250,000.00) in cash. . . .

"The price for the several parcels into which the said property is divided aggregates a sum largely in excess of the price quoted to you in this option to purchase. I reserve the right to sell or to agree to sell any portion of said property before you exercise this option to purchase. In the event that you exercise this option to purchase, the net sum for which said property is sold will be credited to your account on said purchase price.

"Anything contained in this agreement is not to bind me as an individual but solely as said Trustee.

"Yours very truly,
"(Signed) W. F. CHIPMAN,
"Trustee of the Will of Josephine A. Phelps, Decd.''

On the same date, and it would seem as part of the same transaction, although this is not a matter of material importance, the defendant executed and delivered to the plaintiff a certain written agreement, of which the following is a copy:

"Harry F. Davis, Esq.,
   "Attorney at Law,
      "Hobart Building,
         "San Francisco, California.

"Dear Sir: Enclosed please find copy of option to purchase, dated April 24th, 1924, from W. F. Chipman, Trustee of the Estate of Josephine A. Phelps, Deceased, under the terms of the Last Will and Testament of said Josephine A. Phelps, Deceased, to Thomas B. Dozier, Jr., Esq., First National Bank Building, San Francisco, California. Thomas B. Dozier, Jr., has requested me to send you this copy of the above option to purchase, as he states that such option to purchase was secured through your efforts, and that you interested him in the property from a purchase standpoint.

"I hereby agree, if Thomas B. Dozier, Jr., or his assignee or assignees, exercise the above option to purchase, or any modification or change therein which is effected by mutual consent of the parties thereto, to pay you a commission on the sale of the property of Ten per cent. (10%) of the purchase price of same, such commission to be due, and payable ratably and proportionately if, as and when such purchase price is received by me, and such commission to be due and payable only if a sale of this property is effected under such option to purchase, or any modification or change thereof which is effected by mutual consent.

"It is further understood and agreed that, on or before the expiration of said option to purchase, both Mr. Dozier and yourself are to furnish me with the complete names and addresses of all parties with whom you are or have been dealing for the sale of said property under said option to purchase, and that no commission will be due or payable to you except it is effected within one (1) year of said expiration of said option to purchase and with one of the parties whose name and address has been previously furnished by one or both of you, and it is further understood that any party to whom a sale of the property is effected through your efforts must be a party with whom there have been

no negotiations heretofore in connection with said property.

"Anything contained in this agreement is not to bind me as an individual but solely as trustee.

"Yours very truly,

" (Signed) W. F. Chipman,

"Trustee of the Will of Josephine A. Phelps, Decd."

Mr. Dozier failed to exercise his option to purchase said real property within the time fixed therein. He did, however, in conjunction with Mr. Davis, prior to the date of the expiration of said option, furnish to the defendant the names and addresses of certain parties with whom, they stated in said notice, they had been dealing for the sale of said property under said option. Among the names so furnished the defendant by the plaintiff and Mr. Dozier were those of V. M. Price and the Municipal Properties Company, the address of each of these parties being given as Santa Fe Building, San Francisco, California.

It is conceded that the option expired on July 24th, 1924. On July 29th, 1924, the plaintiff met the said V. M. Price on Market Street, in the city of San Francisco. It might be said here that V. M. Price was then and at all times mentioned herein the president of the Municipal Properties Company, a corporation, and in all his dealings with the parties hereto or with Mr. Dozier he acted for said company. At the time of the meeting of the plaintiff and Mr. Price, as just related, the latter inquired of plaintiff how things were with the Phelps estate, to which the plaintiff replied, "Not so good, our option is up." Mr. Price then asked plaintiff to introduce him to the defendant, and at the same time said, "I wonder if he will accept improvements in lieu of a heavy down payment?" to which plaintiff replied, "I don't know but I will cheerfully introduce you." The two then went to defendant's office, and the plaintiff introduced Mr. Price to the defendant. As a result of this meeting Mr. Price, for the Municipal Properties Company, entered into an agreement with defendant for the purchase of the real property described in the option. The terms of the agreement provided for a payment of $2,500 down and the balance over a period of years, with the agreement on the part of Mr. Price that he and his company, who was the real purchaser, would put in certain improvements on the property such as streets, sewers and water mains, and

would grade the land in order to make it suitable for subdivision purposes. This agreement between the defendant and the Municipal Properties Company was executed on August 1, 1924. Before the defendant would accept Mr. Price's offer, or enter into any agreement of sale with him or his company, he secured an agreement from the plaintiff and Mr. Dozier waiving interest on commissions to be paid them. Upon this point Mr. Dozier testified as follows: "He told me that he would not accept that offer [Price's offer] unless Mr. Davis would waive the interest on his commission. . . . I told him I would take the matter up with Mr. Davis on the following morning and he asked me to write him a letter to confirm the arrangement if it was satisfactory to Mr. Davis and for both Mr. Davis and myself to sign the letter." As a result of this conversation the following letter was signed by the plaintiff and Mr. Dozier and delivered to the defendant:

"July 30, 1924.

"W. F. Chipman, Trustee,
    "525 Market Street,
        "San Francisco, California.

"Dear Mr. Chipman: In regard to the matter of the Option to Purchase, dated April 24, 1924, between yourself and Thomas B. Dozier, Jr., and the Agreement for Commission on Purchase and Sale of Real Property, dated April 24, 1924, between yourself and Harry F. Davis, we desire to advise you that we are willing to accept a commission of ten per cent (10%) of each payment on the purchase price on any sale by you to Virgil M. Price or the Municipal Properties Company of the property at San Carlos, such commission to be payable to us out of and from each payment on the purchase price if, as and when received by yourself, without interest.

"Trusting that this confirms our understanding of yesterday, and with kindest regards, we are

"Very respectfully,
    "(Signed) THOMAS B. DOZIER, JR.
    "(Signed) HARRY F. DAVIS."

On August 7, 1924, the defendant mailed to plaintiff and Mr. Dozier his check for $250, being ten per cent commission on the first payment of $2,500, made by Mr. Price on

the purchase of said real property. The letter accompanying said check is in part as follows:

"Gentlemen: Herewith my check, as trustee of the last Will of Josephine A. Phelps, deceased, in your favor for $250, being 10% commission of the first payment of $2,500 made by Virgil M. Price, pursuant to agreement for the purchase and sale of real property by and between W. F. Chipman, Trustee, and Virgil M. Price, dated August 1, 1924.

"This payment to you is in accordance with your letter of July 30, 1924, a copy of which I enclose, wherein you confirm the understanding between us prior to the execution of the agreement for purchase above referred to. . . .

"As you will recall, the new proposition made by yourselves in behalf of Mr. Price for the purchase of the properties differed so radically in the matter of payments that it was only entertained by myself and Mr. Sharpsteen because of several advantages that we believed would benefit the Estate.

"Among those advantages was the provision for immediate improvements on the premises at a cost of $50,000.00, the payment of commission to you if when and as received without interest, and other features that convinced Mr. Sharpsteen and myself that such a contract would be desirable.

"Attached to the enclosed check for $250.00 please find vouchers in duplicate which kindly sign and return to me promptly.

"Sincerely trusting that the agreement between Mr. Price and me may have most beneficial and satisfactory results for all concerned.

"With kind regards,

"Yours respectfully,
"(Signed) W. F. CHIPMAN, Trustee."

Thereafter the defendant made the following payments on account of commission on payments made by Mr. Price on the purchase price of said real property: August 7, 1924, $125, January 17, 1925, $145, and January 31, 1925, $105.

Defendant refused to make any further payments under his said agreement, although prior to the institution of this and the companion case of *Dozier* v. *Chipman,* Mr. Price had paid to defendant the full purchase price of said real

property. Prior to the commencement of said actions the plaintiff, on or about July 28, 1924, assigned to the said Thomas B. Dozier, Jr., one-half of his claim against the defendant, and the court found that said assignment was with the knowledge and consent of the defendant. Plaintiff instituted this action to recover of the defendant the sum of $12,125,- being one-half of the commission of ten per cent of $250,000, the full purchase price of said real property, less the sum of $375, paid thereon by defendant. An action for a like amount against defendant was also instituted by the said Thomas B. Dozier under his assignment from plaintiff. The two actions were tried on the same evidence. Judgment was rendered in favor of the plaintiffs therein and against the defendant for the full amount sued for. The defendant has appealed from the judgment in each action.

The basis of defendant's refusal to pay the claim of the plaintiff was that plaintiff was not at the time defendant wrote the letter of April 24, 1924, in which he agreed to pay plaintiff said commission, nor at the time of the sale of said real property, on August 1, 1924, to the said V. M. Price, a licensed real estate agent or broker, and therefore plaintiff had no legal claim to said commission, or any part thereof.

Appellant now makes the same contention, in this court that was made by him in the trial court—that is, that plaintiff, not having been a licensed real estate·broker during any of the time he was dealing with the defendant, cannot recover for his services rendered under the agreement set forth in the letter of April 24, 1924.

Section 2 of the act, which we will refer to as the Real Estate Brokers' Act (Stats. 1919, p. 1252), as it stood at the time of the transaction involved, defined a real estate broker as follows:

"A real estate broker within the meaning of this act is a person, copartnership or corporation who, for a compensation, sells, or offers for sale, buys, or offers to buy, or negotiates the purchase or sale or exchange of real estate, or who, for compensation, negotiates loans on real estate, leases, or offers to lease, rents, or places for rent, or collects rents from real estate, or improvements thereon, for others as a whole or partial vocation."

Section 20 of the same act provided that no person acting in the capacity of a real estate broker shall bring or maintain any action for collection of compensation "for the performance of any of the acts mentioned in section two hereof without alleging and proving that such person . . . was a duly licensed real estate broker . . . at the time the alleged cause of action arose."

Turning now to the letter of April 24, 1924, upon which the plaintiff relies in support of his claim for a commission on the sale of the property mentioned therein, we observe that in the first place it contains an agreement on the part of the defendant to pay the plaintiff a commission of ten per cent on the purchase price, "if Thomas B. Dozier, Jr., or his assignee or assignees, exercise the above option to purchase" said real property. This letter, which was addressed to the plaintiff, in its opening paragraph stated that "Thomas B. Dozier, Jr., has requested me to send you this copy of the above option to purchase as he states that such option to purchase was secured through your efforts, and that you interested him in the property from a purchase standpoint." As we read these two paragraphs together their meaning is clear. If Dozier, Jr., either personally or through others, exercised his option to purchase said property defendant was to pay plaintiff a commission on such sale in consideration of the services rendered by plaintiff in interesting Dozier in said property. The conditions of this agreement it is conceded were not met by plaintiff. Dozier did not exercise his option nor was any agreement for the sale of said property effected during the life of said option. We may dismiss this agreement, therefore, from any further consideration. The sale which was entered into with Price was made after the expiration of the option. Accordingly plaintiff cannot claim under this agreement any commission for making such sale.

The third paragraph of the letter, however, contained a further agreement. This agreement was, in effect, that the plaintiff and Dozier, on or before the expiration of said option, were to furnish to defendant the names and addresses of all parties with whom they had dealt for the sale of said property under said option, and if the property, within one year after the expiration of said option, should be sold to one of the parties whose name and address had been previously furnished to defendant, then and in

that event he would pay to the plaintiff a like commission on the sale of said property as that provided in the previous paragraph of said letter. It is under this paragraph of the letter that the plaintiff contends that he is entitled to recover in this action. Under the agreement set forth therein it was necessary before plaintiff was entitled to claim a commission for three acts to be performed. First, plaintiff or Dozier must have dealt for the sale of the property with the person to whom the property was subsequently sold. Second, they must have sent to defendant the name and address of said party on or before the date of the expiration of the option. Third, the property must have been sold within one year to one of the parties whose name plaintiff or Dozier had sent to the defendant as a party with whom they had dealt for the sale of said property under said option.

It is questionable, whether, under the terms of this agreement, plaintiff or Dozier were required to bring about a sale of said property, after the expiration of said option, Their part was fulfilled, we think, when they had performed the first two conditions of this agreement. They were required, however, first to deal for the sale of said property under the option with the person who thereafter purchased it, and, secondly, they were to furnish the name of such purchaser to the defendant on or before the expiration of the option. For these services the defendant agreed to pay a commission on the sale of said property. Of course, the mere furnishing of the names of the parties with whom they had dealt for the sale of the property is not the performance of any act mentioned in section 2 of the Real Estate Brokers' Act, and such services could be performed and compensation collected therefor by one not a licensed real estate broker. But we hardly think we can say the same thing regarding the act of dealing with a party for the sale of the property. It is not easy to perceive how a person could deal with another for the sale of property without offering to sell the property to such person. If, therefore, the plaintiff, acting as the agent of the defendant for a compensation, offered to sell said property to Price, then he was performing an act expressly mentioned in section 2 of the Real Estate Brokers' Act as one which

could be legally performed only by a licensed real estate broker.

However, the plaintiff contends that while he dealt with Price for the sale of the property he did not offer to sell said property directly to Price but simply attempted to interest Price in joining a syndicate which would take over Dozier's option and purchase the property. The evidence shows that Price was interested in the purchase of the property during the life of the Dozier option, and approached the plaintiff and Dozier with that end in view, but that both plaintiff and Dozier refused to entertain any offer from Price for the purchase of the property, and sought to interest him in their scheme to form a syndicate to purchase the property. Price was not interested in the syndicate plan, and declined to become a party to it, and there the matter was dropped, so far as Price was concerned, until after the option expired. Under this state of facts, did plaintiff offer to sell the property?

Plaintiff contends, as stated already, that while he dealt with Price for the sale of the property he did not offer to sell the property to Price. That plaintiff's dealings with Price contemplated and involved a sale of the property, we think, there can be no question. Under no other theory can it be held that plaintiff dealt with Price for the sale of the property. These negotiations with Price contemplated a sale of the property. The fact that the sale was not to be made to Price directly, but to a company or syndicate of which Price was to be a member, was not material. In either event the dealings of the parties contemplated a sale of the property, and if a sale, then, necessarily, there must have been an offer to sell the property, either to Price, individually, or to him as a member of the syndicate. As an offer to sell property by an agent for a compensation cannot legally be made except by a person holding a license as a real estate broker, it follows that the act of plaintiff in making said offer was illegal, and will not support a promise to pay for said services. (*Wise* v. *Radis*, 74 Cal. App. 765 [242 Pac. 90]; *Haas* v. *Greenwald*, 196 Cal. 236 [59 A. L. R. 1493, 237 Pac. 38].)

We do not think the case of *Shaffer* v. *Beinhorn*, 190 Cal. 569 [213 Pac. 960], is applicable to the facts of this case. There all that the plaintiffs, who were not licensed real

estate brokers or licensed real estate salesmen, were required to do in order to be entitled to compensation for their services was to "find anyone interested in the purchase of such ranch to whom the said defendant would be able to negotiate a sale thereof," or to "introduce to said defendant anyone to whom the said defendant would be able to negotiate a sale thereof." The court held that a complaint predicated upon such an agreement stated a good cause of action. "The acts of plaintiffs, therefore, as alleged in the complaint, fall short of those defined by the Real Estate Brokers' Act as constituting either a real estate broker or real estate salesman." In that case the plaintiffs were not required to do anything except to find a person interested in the ranch and introduce him to defendant. They were not required to sell the ranch or to offer it for sale, or to deal with any person for the sale thereof, or to take any part in negotiating its sale. In the present action, while the plaintiff may not have been required to do anything toward effecting a sale of the property after the expiration of the option, yet during the option he was required to deal with the subsequent purchaser for the sale of the property, and this, as we have already stated, he could not do without either directly or indirectly offering to sell him the property.

While plaintiff had no license to act as a real estate broker at or before the sale of said real property to Price, he did secure such a license on July 24, 1925, and from this last-named date continuously to the commencement of this action (except for the month of January, and the first twenty-seven days of February of 1926) held a license to act as a real estate broker. While the plaintiff was thus the holder of a valid broker's license there was paid to defendant on the purchase price of said real property approximately the sum of $190,000. It is now contended by the plaintiff that he is entitled to recover the commission provided for in the agreement with defendant on all payments made on account of said purchase price during the time he held such license.

Plaintiff bases this contention upon the provisions of the Real Estate Brokers' Act (section 20), which provides that no recovery for commission on sale of real estate by a real estate broker can be had unless it is alleged and proven that such person was a licensed real estate broker at the

time the action arose. In *Houston* v. *Williams,* 53 Cal. App. 267 [200 Pac. 55], the broker had no license required by said act at the time the commission contract was executed but at the time he obtained a purchaser for the property he had the proper license. These facts were alleged in the complaint and found to be true by the court. A judgment in favor of the broker was sustained by the appellate court. In this action the court held that the cause of action arose when plaintiff obtained a purchaser for the property. In discussing the question the court said, after quoting section 20 of the Real Estate Brokers' Act (page 271) : ''Manifestly the legislature herein undertook to prescribe an essential condition of recovery but limited its operation to the time when the cause of action arose. By implication any earlier time was excluded. It is a reasonable construction of the act to hold that it is unlawful for anyone to engage in the business of a real estate broker without having secured a license, but he is not precluded from recovering compensation for his services if he had such a license at the time his cause of action arose although his contract may have been executed prior to that time, when he had no license. Herein, manifestly, the cause of action arose when the plaintiff obtained a purchaser for the property and it is not disputed that then he had the proper license, and it was so alleged in the complaint.''

We find no decisions of our courts that have extended the rule beyond that enunciated in that case. To adopt plaintiff's construction of the statute would be to defeat the whole object and purpose of the Real Estate Brokers' Act. In *Riley* v. *Chambers,* 181 Cal. 589 [8 A. L. R. 418, 185 Pac. 855], this court held that the primary purpose of the Real Estate Brokers' Act was to require the real estate brokers and salesmen to be ''honest, truthful, and of good reputation''. In *Houston* v. *Williams, supra,* the appellate court held that, ''It (the Real Estate Brokers' Act) was designed . . . to protect the public against unscrupulous operators''. Under plaintiff's version of this statute a person without a license to act as a real estate broker might enter into contracts for the payment of a commission for the sale of real property, might interest prospective purchasers in the purchase of said property, might actually effect a sale of said property for the owner, in fact, he might do any-

thing that a licensed broker might do, and then by having his contract provide for the payment of his commission at a future date, collect his commission, provided he secured a license on or before the date his commissions became due. We are satisfied that the legislature never intended the act should receive any such construction.

Then again the results that would follow from such a construction indicate its fallacy. The act provides that it shall be unlawful for any person to act as a real estate broker without first obtaining a license therefor. (Sec. 1.) It declares that the violation of this provision of the act shall be a penal offense punishable by imprisonment in the state prison or the county jail, or by a fine not to exceed $2,000, or by both such fine and imprisonment. (Sec. 17.) If the courts were to place the construction upon this act contended for by the plaintiff, a person might be prosecuted in the criminal court for the violation of this statute and convicted, suffer fine and imprisonment in the state prison for such act, and at the same time, but on the civil side of the court, might recover judgment for the same services for the doing of which he was then suffering punishment under the judgment of conviction entered against him in the criminal action. We cannot bring ourselves to believe that such contradictory and inconsistent results were ever contemplated by those responsible for the enactment of the Real Estate Brokers' Act. In many instances, no cause of action arises in favor of a person for the performance of an act made illegal by statute. This is particularly true when the statute is one enacted for the purpose of regulating a particular business for the protection of the public. (*Wood* v. *Krepps,* 168 Cal. 382 [L. R. A. 1915B, 851, 143 Pac. 691].) The Real Estate Brokers' Act belongs to this class of statutes. (*Riley* v. *Chambers, supra.*)

In *Houston* v. *Williams, supra,* it was held that a limitation upon this rule was made by section 20 of the act, and that the rule in all its rigor should not apply to a person holding a broker's license at the time he consummated a sale of real property even though he had no such license at the time he entered into a contract with the owner to pay him a commission. The court there held that a reasonable construction of the act would permit such a holding. While agreeing with the appellate court in this ruling, we

are further of the opinion that it would be a most unreasonable construction of the statute to hold that it permitted an action to be maintained as in the present proceeding where the plaintiff had no license at the date the sale of the property was effected, or during any of the time during which he rendered the services for which he seeks to recover, and only secured such a license practically a year after the sale was effected. As plaintiff held no broker's license at the time the sale involved herein was consummated, he is not entitled to recover compensation for his services, all of which were rendered prior to his securing any license.

■ We are asked by defendant in case we should reverse the judgment appealed from to make new and additional findings of fact and direct that judgment be entered in favor of the defendant. We are satisfied from a study of the findings that a judgment in favor of the defendant based thereon would not be proper, that the findings of the trial court would not support a judgment in favor of the defendant. Therefore, in order for us to direct the entry of a judgment in favor of the defendant it would be necessary for this court to reverse the judgment and make new findings of fact. In *Tupman* v. *Haberkern*, 208 Cal. 256 [280 Pac. 970, 976], this court defined the powers of appellate courts in cases like the present action as follows: "And if new findings be made as a basis of a reversal, with directions to the trial court to enter a judgment for the appellant, it must appear from the record . . . that on no theory grounded on reason and justice could the party defeated on appeal make a further substantial showing in the trial court in support of his cause." In view of the rule so recently promulgated by this court, we are of the opinion that the present action is not one in which we should exercise our power to make new findings and base thereon an order reversing the judgment and directing the trial court to enter a judgment in favor of the defendant. For this reason we are of the opinion that the order of this court should be limited to a simple reversal of the judgment.

■ We reverse the judgment in this action reluctantly. The equities of the case are all in favor of the plaintiff. Even the defendant during the trial conceded that from an

equitable standpoint plaintiff was entitled to recover for his services. During the negotiations between Price and the defendant which led up to the sale of the property to Price, defendant delayed acceptance of Price's offer until he could have an agreement with plaintiff and Dozier regarding their commission, and after the sale to Price had been effected, defendant wrote the letter of August 7, 1924, in which he confirmed his agreement to pay a commission and acknowledged his liability to plaintiff and Dozier for their services. Not only that, but defendant actually paid to plaintiff and Dozier a commission upon the first and two subsequent payments on the purchase price of the land sold to Price. If it were in the power of the defendant to ratify his agreement with plaintiff and Dozier, he surely accomplished such a ratification by his letter just referred to. But the acts of plaintiff for which he seeks to recover compensation, having been expressly prohibited by statute, were beyond ratification by the parties.

It should be said, however, in explanation of the defendant's position in this matter, that he is not acting for himself, but as the trustee of trust property. He, therefore, cannot be governed by the equitable considerations of this transaction, but can be held accountable to the beneficiaries of his trust to a strict legal performance of his duties. It is apparent, therefore, that should he, as such trustee, expend any of the trust funds which may come into his hands for any purpose not permitted by some express provision of law, he could be held liable for such expenses to the beneficiaries of the trust, and could be forced by them to restore from his own private means all money thus illegally expended by him. There can be no criticism of the position taken by the defendant, and none is intended by anything that we have said in this opinion regarding his failure to comply with his written agreement.

The judgment is reversed.

Richards, J., Langdon, J., Waste, C. J., Shenk, J., and Seawell, J., concurred.

Rehearing denied.

Shenk, J., and Preston, J., dissented.