[Civ. No. 920. Fourth Appellate District.—March 28, 1932.]

R. E. WHITE et al., Respondents, v. KRETZ BROTHERS et al., Appellants.

Hickcox & Trude for Appellants.

Swing & Swing for Respondents.

MARKS, J.—Respondents recovered judgment in the sum of $20,060 for damages suffered by both of them in an automobile collision which occurred on June 30, 1929, in Imperial County on the Ocean-to-Ocean Highway connecting the cities of Brawley and Los Angeles. Appellants made a motion for new trial which was denied. They have prosecuted this appeal from the judgment entered upon the verdict of the jury.

Appellants urge the following grounds upon which they rely for a reversal of the judgment: First, that the evidence was insufficient to justify the verdict; second, that the damages awarded are excessive; third, that the trial court erred in submitting the case to a jury at the request of respondents and over the objection of appellants.

The evidence offered for the respondents discloses that they were husband and wife, both forty-eight years of age at the time of the trial; that with their daughter, Freda, they were traveling easterly on the Ocean-to-Ocean Highway in a Hupmobile sedan which was being driven by R. E. White at a speed of about thirty-five miles per hour and upon his right-hand side of the road which traversed rolling ground at the place of the accident. As respondents were ascending a slight rise in the road they met a truck and trailer belonging to the appellants which was being driven by Henry Kretz acting for himself and the other appellants. Instead of being on his own right-hand side of the road, Henry Kretz was in the center of it and his left wheels not more than three feet northerly from the southerly edge of the pavement. White turned his car sharply to his right to avoid a collision with the truck. At the time of the impact the right wheels of his car were about three feet south of the southerly edge of the pavement and the left wheels were on the pavement about a foot northerly from its southerly edge. Kretz swerved his truck to its right and the trailer whipped further to the southerly edge of the road, its rear axle catching the left front end of the

frame of the White automobile causing the collision in which both respondents were injured. A statement of these facts is sufficient to demonstrate the negligence of appellants, which was the proximate cause of the accident, and the lack of contributory negligence on the part of respondents.

Appellants maintain that the case was improperly tried before a jury and that this court can review the evidence and weigh it under the provisions of section 956a of the Code of Civil Procedure, make findings and enter judgment in their favor. This contention was decided adversely to them in the cases of *Tupman* v. *Haberkern,* 208 Cal. 256 [280 Pac. 970], *Davis* v. *Chipman,* 210 Cal. 609 [293 Pac. 40], and *Isenberg* v. *Sherman,* 212 Cal. 454 [298 Pac. 1004, 299 Pac. 528].

Both respondents were injured in the collision. R. E. White had his breastbone fractured and was bruised and shaken up and suffered pain and could not work for some time. Mrs. White was very seriously injured as is shown by the following quotation from a summary of the testimony of one of her attending physicians printed in the supplement to the appellants' brief. ''I know the plaintiff Levar White. She came to me July 8, 1929. She was very highly swelled and it was practically impossible for her to sleep. I examined her mouth and found on the right side the mandible was fractured, that would be about the location of the first or second molar teeth had there been any present. She also had a fracture on the left side. It was what you would call a compound multiple fracture. You could touch the bone where it was protruding through. She at that time was suffering excruciating pain. I had an X-ray that shows the fractures. There were no teeth in her mouth. It was an 'edentulous' case, but there was one unerupted tooth. The treatment in cases in which there are no teeth is a problem in itself because you have no teeth in the mouth for guidance, nor have you anything to anchor to; so that the problem resolved itself into some means of support for the portion that would drop and some means of pressure for that part that would leave its normal position and rise to a point where it would not make a union; and, so, in order to handle this, it was necessary that a head cap, with projecting wires, with a hammock to carry

the broken chin—the mandible forms the chin, and this chin support is placed under with screw buckles was gently brought into place until the ridge inside the mouth felt even; and the next day, upon the same apparatus, was added a wire with what we call a 'stent', which is a plastic, flexible material when hot and very rigid when cold; and with the stent, on wiring, pressure was made against the ramus of the jaw, the ramus being the perpendicular part but in fractures of this type is pulled upward and forward out of place. This pressure then was made upon the ramus to hold backwards and downwards. The reason that an apparatus of this kind is used upon a multiple fracture in a case of no teeth in the mouth is because the only other alternative is to cut down on the bone and bore holes in it and set wires through it, and then you have to splint that. I removed that splint August 28th; and on September 6th I did the plastic operation on her neck. On the right side, where there was an open wound which had been closed in the skin, and the muscles had been allowed to pull apart so that it had a very ugly scar, and I removed the scarred area and lifted up the skin and went in and joined the muscles of the neck together and then replaced the skin over them to make her neck smoother. While she was taking treatment she stayed at the Mission hotel, across the street from the office, so I could have her close to adjust this splint. In adjusting a fracture of that kind that has gone for days, which you see there, she had adhesions and a certain union will take place that has to be readjusted, and it is a very, very painful thing. This woman was not in any condition to take a general anaesthetic; and if she had taken one she would have been nauseated and thrown the jaw out of position. Consequently I had her go to that little hotel so that I would have her two or three times a day. They would bring her back and forth and I would set the screws up and work on it until I got it in as straight a position as possible then I let her go home. Mr. Eckhardt: I will state for the record and for the information of counsel that we expect to show that since the accident Mrs. White has not been able to wear false teeth. Q. Doctor, assuming that the proof is made that I have just indicated in my statement, what would you say with reference to the injury as being or not being a cause of Mrs. White's not being able

to wear false teeth. Mr. Hickcox: Object to that on the ground it is not a proper hypothetical question and it is not laying a sufficient foundation for the question. The Court: Objection overruled. A. Well, I think there is no question but that the injury is the cause of that condition, because in the breaking of the mandible, particularly at the point that this has occurred on the right, there is nearly always some overlapping of the ramus with the mandible. There is a great deal of tenderness left, and with a fracture in an edentulous case it has been my experience that the movements of the jaw are not as free or as normal as were the movements before the fracture; it makes a permanent change because there is a definite change of alignment of the part of the jaw. She will never have the same use of the jaw that she would have had had it not been fractured. The fracture on the right is a permanent injury because of the fact that the jaw is slightly shortened at that point. My charges to her were $1,000.00.''

In a case of this kind the amount of damages to be awarded is first left to the sound discretion of the trial jury. It is next left to the discretion of the trial judge who may consider the evidence, review the facts and set aside or reduce the verdict if it is unjust. An appellate court cannot set aside a judgment as excessive unless it is ''so plainly and outrageously excessive as to suggest, at the first blush, passion or prejudice or corruption on the part of the jury''. (*Lahti* v. *McMenamin*, 204 Cal. 415 [268 Pac. 644, 645].) In view of the injuries to R. E. White and his consequent suffering and loss of earning power, and the very serious injuries suffered by Mrs. White, we cannot say as a matter of law that the verdict and judgment are excessive.

By a notice filed October 29, 1929, the attorneys for respondents notified the then attorney for appellants ''that on the 4th day of November, 1929, the undersigned will have said cause placed on the waiting trial list''. No action seems to have been taken on this notice as the record contains no mention of anything done in the case on November 4, 1929.

Under the heading ''Minute Entry'' Friday, November 1, 1929, the following appears: ''At this day it is ordered by the court that the above entitled cause be and hereby is set for trial on January 15th, 1930.'' This order of November 1st, setting the case for trial does not seem

to have been initiated by either party, whose attorneys do not appear to have been in court on that date. We must conclude that this order was made by the court on its own motion. The record contains no notice to the attorneys for either party of this setting.

On January 7, 1930, the attorneys for respondents filed a written demand for a trial by jury and paid the jury fee. The record is silent as to what happened on January 15, 1930, the day the case had been set for trial by the court, but counsel for appellants state in their brief that "the case could not be tried on January 15."

The trial court minutes of January 17, 1930, contain the following entry: "At this day it is ordered by the Court that the above entitled cause be and hereby is set for trial on March 25, 1930. The defendant's objection to a jury is noted." On January 17, 1930, the clerk of the trial court sent counsel for both parties the following notice: "Please take notice that the above entitled cause was set for trial March 25th, 1930." On January 21, 1930, the following notice by the attorneys for respondents was filed: "Notice is hereby given that the plaintiffs hereby demand a trial by jury in the above entitled action. Jury fees were heretofore sent you."

The record contains a copy of a minute order of March 21, 1930, whereby the trial date was fixed for May 21, 1930, and another minute order of February 6, 1931, setting the trial for March 2, 1931, on which date the trial was begun before a jury. Appellants strenuously urged then, and maintain here, that a trial by jury had been waived by respondents and that error was committed in submitting the case to a jury.

Appellants maintain that respondents waived a trial by jury under the provisions of subdivisions four and five of section 631 of the Code of Civil Procedure in effect at the time, which provided as follows: "Trial by jury may be waived by the several parties to an issue of fact in manner following: (4) By failing to announce that a jury is required, at the time the cause is first set upon the trial calendar if it be set upon notice or stipulation, or within five days after notice of setting if it be set without notice or stipulation. (5) By failing to deposit with the clerk, within ten days prior to the date set for trial, a sum equal to the

amount of one (1) day's jury fees payable under the law." These provisions have been considered in recent decisions. (*Stern* v. *Hillman*, 115 Cal. App. 156 [300 Pac. 972]; *Harmon* v. *Hopkins*, 116 Cal. App. 184 [2 Pac. (2d) 540]; *I. S. Chapman Co.* v. *Cramer*, 118 Cal. App. 304 [4 Pac. (2d) 970]; *Duncan* v. *Reichlin*, ▮ Cal. App.) 8 Pac. (2d) 922.) We do not believe the facts of this case necessarily bring it within the rules announced in these decisions.

The waiver of a trial by jury under the provisions of subdivision 4, section 631, of the Code of Civil Procedure, where the case is not set upon motion or by stipulation, is based upon a failure to demand a jury within five days after notice of setting the case for trial. As the case was first set by the court on its own motion, and as respondents received no notice of this setting, it is obvious that they would not be precluded from a jury trial by the provisions of this subdivision.

Subdivision 5 of section 631 of the Code of Civil Procedure contains no such saving clause, but provides that a jury trial may be waived by the failure of a party to deposit one day's jury fees with the clerk ten days prior to the date set for the trial. This case was pending in Imperial County. Respondents and their counsel were residents of San Bernardino County. They had no notice of the setting of the cause for trial or of the trial date. Article I, section 7, of the Constitution provides that the right of jury trial shall be secured to all and shall remain inviolate; that in civil actions it may be waived "by consent of the parties, signified in such manner as may be prescribed by law". We are not prepared to hold under the facts here disclosed that the failure of respondents to deposit the jury fees by January 5, 1930, should be held a "consent" on their part to a trial by the court without a jury where they had neither actual nor constructive notice of the setting order nor of the trial date, knowledge of which should be necessary to fix consent upon them. Neither party then had the five days' notice of trial required by section 594 of the Code of Civil Procedure. Where, as here, the trial court set the case for trial upon its own motion without the knowledge of either party and without

any notice to them of either the order of setting or the date fixed for the trial, we cannot hold that either party waived a jury trial by failure to deposit the required jury fees ten days before the date so fixed for trial by the court.

In the case of *Harmon* v. *Hopkins, supra,* the following appears, part of which is *dicta*: ''It is probably true that the court had the right, notwithstanding such waiver, to submit the case to trial by jury, if he had chosen to do so (*Doll* v. *Anderson,* 27 Cal. 249), but the court has a discretion in the matter and its order refusing to submit the case to a jury will not be disturbed, when no gross abuse of discretion appears. (*Ferrea* v. *Chabot,* 121 Cal. 233 [53 Pac. 689, 1002].) Appellants have not attempted to point out wherein they have suffered any injury or prejudice by reason of the trial by the court instead of the jury. Their only complaint on this appeal is 'the trial court erred in denying plaintiffs a jury trial'. Prejudice will not be presumed as a consequence of the issues of fact, in a case being tried by the court instead of the jury. On the contrary, the presumption is that the appellants have enjoyed the benefit of a fair and impartial trial, according to the usual modes of procedure under the Constitution and laws of this state. Clearly, the appellants have failed to show any prejudice or other error on the part of the court which would justify a reversal of the case.''

Judgment affirmed.

Barnard, P. J., and Thomson, J., *pro tem.,* concurred.