[Civ. No. 3203. Second Appellate District, Division One.—October 7, 1920.]

EUGENIO DAHNE, Appellant, v. LOUISE B. DAHNE, Respondent.

[1] APPEAL—EVIDENCE—OBJECTIONS TO.—The objection that certain testimony pertaining to a matter not within the issues was elicited from plaintiff on cross-examination cannot be raised for the first time on appeal.

[2] TRUSTS—ACTION TO ESTABLISH—ISSUES—IRRELEVANT TESTIMONY —NEGATIVE ANSWERS—LACK OF PREJUDICE.—In this action to establish a trust in certain real property and to compel a conveyance of the property to plaintiff, notwithstanding the defendant by her answer denied that plaintiff had paid the entire purchase price of the property and alleged that the entire consideration therefor was paid by herself, plaintiff could not have been prejudiced by the action of the trial court in permitting him to be cross-examined as to whether he did not at the time of the purchase of the property consider that he was giving it to defendant, his answers having been negative.

[3] ID.—PURCHASE OF PROPERTY — SOURCE OF MONEY — EVIDENCE.— Where, notwithstanding the purchase price of the property, the subject of such action, was concededly paid by defendant, plaintiff claimed that it was his money, the source from and the manner in which defendant obtained it was a proper subject of in-

quiry, and evidence that the money which she paid for the property accumulated from gifts thereof from time to time made by plaintiff to her was properly received.

[4] ID.—EXISTENCE OF CONFIDENTIAL RELATIONS — GIFTS — FRAUD — UNDUE INFLUENCE — PRESUMPTIONS — BURDEN OF PROOF.—Confidential relations having existed between plaintiff and defendant at the time the gifts to her were made, although they were not man and wife, it devolved upon the latter not only to show the making of the gifts with which she acquired the property, but, since the law from that relation presumes the existence of fraud or exercise of undue influence as against the one who profits in the transaction, the burden rested upon her to overcome this presumption by showing that the making thereof was not the result of such fraud or influence.

[5] ID.—UNDUE INFLUENCE—EVIDENCE—FINDINGS.—In this action to establish a trust in certain real property standing of record in defendant's name, and which she claimed was purchased by her with moneys accumulated from gifts thereof from time to time made to her by plaintiff, although the findings of the court omitted the words "undue influence," its findings, upon sufficient evidence, to the effect that the gifts by plaintiff were made voluntarily and of his own free will and accord were sufficient to exclude the theory that they were due to any influence exercised by defendant over plaintiff.

[6] HUSBAND AND WIFE—GIFT OF COMMUNITY PROPERTY—CONSENT OF WIFE.—A husband has no power to revoke his own gift of community property on the ground that his wife did not consent to the making of it; but, as to him, he is as fully bound by such gift as though it was of his separate property.

APPEAL from a judgment of the Superior Court of San Diego County. C. N. Andrews, Judge. Affirmed.

The facts are stated in the opinion of the court.

Jefferson Davis and Sweet, Stearns and Forward for Appellant.

Holcomb & Kempley for Respondent.

SHAW, J.—In this action plaintiff sought a decree declaring certain real property, consisting of a house and lot, legal title to which was vested in defendant, to be the subject of a trust wherein, as alleged sole beneficiary and legal owner thereof, he prayed that such trustee be required to execute a deed conveying the property to him.

The admitted facts and defendant's testimony, in ac-
cordance with which, since the only evidence in conflict
therewith is the testimony of plaintiff, the court properly
made its findings, show that on January 17, 1906, plaintiff,
knowing that he had a legal wife then living and falsely
representing that she was dead, married the defendant, with
whom he cohabited and lived as her husband until March
26, 1916, during all of which period the court found that
confidential relations existed between the parties. The
property in question was purchased by defendant on July
28, 1913, on which occasion plaintiff, who was present,
stated that it was his wife's transaction and directed that
the receipt for two hundred dollars paid on account of the
purchase price be issued to her, which was done. A few
days later she paid eighteen hundred dollars on account
of the purchase; whereupon a deed was executed by the
owner conveying the property to her, subject to an existing
mortgage thereon. The consideration paid for the prop-
erty consisted of funds accumulated by the parties during
the time they were living together as husband and wife
and moneys from time to time given to defendant by plain-
tiff. That, as found by the court, it was the intention of
plaintiff, and in pursuance of which he acted, to give the
property to defendant as her own estate, conclusively ap-
pears not only from statements touching the subject con-
tained in plaintiff's letters, but also from the fact that
about March 25, 1916, upon learning that, due to the prop-
erty having been conveyed to his putative wife by another,
some question existed as to her power to sell and convey it
without his joining therein, he, for a consideration of ten
dollars, which defendant paid to him, voluntarily and of his
own accord executed to her a quitclaim deed to all his
right and interest in the property. The effect of the find-
ings is to exclude the making of any promises, representa-
tions, persuasion, fraud, or anything said or done on the
part of defendant to influence plaintiff's action; on the
contrary, it appears therefrom that, whatever he did in the
matter, was voluntary, of his own free will and accord,
and without conditions, representations, or promises made
on the part of defendant, and with the intention that the
property should be her sole and separate estate; all of which
findings are fully supported by defendant's testimony.

Coming now to the alleged errors of which appellant complains, the defendant, in response to an allegation of the complaint that plaintiff had paid the entire purchase price of the property, and was and at all of the times mentioned had been the owner in fee thereof, denied the same and alleged that the entire consideration therefor was paid by herself. Because of this denial and counter-allegation in defendant's answer, appellant insists that the court erred in permitting respondent's attorney to interrogate plaintiff on cross-examination with reference to the property being the subject of a gift made by him to defendant. In connection with this testimony certain letters written by plaintiff to defendant were introduced in evidence, wherein he recognized the property as being the sole and separate estate of defendant, and also recognized the proceeds of a mortgage given thereon as being her sole and separate estate, and which, if used in the manner directed by him, he would pay back to her. He was then questioned as to whether he did not at the time of the purchase of the property consider that he was giving it to defendant, to all of which questions he gave negative answers. No objection was made to the questions, but after they were answered plaintiff's attorney for the first time stated: "It seems to me she is precluded from changing her tactics and claiming a gift when her answer alleges she purchased it with her own separate funds." [1] In the absence of any objection made or motion to strike out the testimony upon the ground now urged, that it pertained to a matter not within the issues, appellant is in no position to raise the question for the first time in this court. [2] Moreover, if error, since his answers were negative, he could not in any event have been prejudiced by the evidence.

It is next insisted that proof made by defendant that the real estate was the subject of a gift from plaintiff, constituted a variance between the allegations of the answer and evidence received. [3] Defendant's testimony was to the effect that she paid for the property with money accumulated from gifts thereof from time to time made by plaintiff to her, as to all of which testimony no objection whatever was interposed. Moreover, notwithstanding the purchase price of the property was concededly paid by defendant, plaintiff claimed that it was his money; hence

the source from and manner in which defendant obtained it was a proper subject of inquiry and evidence tending to controvert his claim was properly received. As to this point we perceive no merit in appellant's contention.

The evidence conclusively shows that following the marriage ceremony the parties lived together and cohabited as man and wife for some ten years, during all of which time plaintiff was fully cognizant of his bigamous marriage, and of which fact defendant had no knowledge until shortly before this action was commenced, when she learned that he had a wife then living from whom he had not been divorced, and thereupon separated from him. Due to this fact appellant insists that, notwithstanding the relation was illicit, the law presumes that a gift of either the property or money with which it was purchased was the result of undue influence exercised by defendant, and, therefore, the transfer was invalid. Plaintiff did not base his alleged right to the property upon the ground that it was the subject of a gift; on the contrary, he denied that it was so held by defendant, claiming that he paid the purchase price thereof out of his separate funds and caused the title to be vested in defendant merely as a matter of convenience and in reliance upon her parol promise to convey to him upon request, as to which, as stated, the court made adverse findings. As tried, however, and without objection, the case took a wider scope, and while it was made to appear that the allegations of the complaint as to alleged actual fraud were untrue, the evidence disclosed that, in part at least, the property was purchased with money which plaintiff, who at times received a salary of sixteen hundred dollars per month, had given to defendant. [4] Since, although the parties were not husband and wife, the court found at the times such gifts were made *confidential relations existed between the donor and donee,* it devolved upon the latter not only to show the making of the gifts with which she acquired the property, but, since the law from the relation found to exist presumes the existence of fraud or exercise of undue influence as against the one who profits in the transaction, the further burden rested upon her to overcome this presumption by showing that the making thereof was not the result of such fraud or influence. (Secs. 2219 and 2235, Civ. Code; *White* v. *Warren,* 120 Cal. 322, [49 Pac.

129, 52 Pac. 723]; *Frantz* v. *Porter*, 132 Cal. 53, [64 Pac. 92]; *Odell* v. *Moss*, 130 Cal. 352, [62 Pac. 555].) As to such transactions, "the party benefited by it will be under the necessity of showing that no advantage was taken, and that it was the result of free volition." (Cooley on Torts, 3d ed., p. 982.) [5] While in the findings the trial court omits the use of the words "undue influence," it does in effect and upon sufficient evidence find that the gifts by plaintiff were, in the absence of fraud, made voluntarily and of his own free will and accord, thus excluding the' theory that they were due to any influence exercised by defendant over him, and under the rule that findings should be construed most favorably in support of the judgment, we deem them sufficient.

Appellant next argues that, conceding defendant contracted the marriage with plaintiff in good faith, believing his representation that the wife to whom he had theretofore been married was dead, nevertheless, and notwithstanding her innocence, she acquired no marital rights in his property. A sufficient answer to this contention is that she does not claim the property by virtue of any marital rights as the wife of plaintiff. In the case of *Jackson* v. *Jackson*, 94 Cal. 446, [29 Pac. 957], cited by appellant, the facts are readily distinguishable from those in the instant case. What is there said is based upon the fact that when the husband contracted the marriage, the former wife had, due to her desertion of him in a foreign country, been absent for a period of more than five years, was reputed to be and in good faith by him believed to be dead, in which case, under subdivision 2 of section 61 of the Civil Code, his second marriage was valid until annulled; whereas, in the present case, the complaint discloses that plaintiff knew at the time he contracted the marriage with defendant he had a wife then living from whom he had not been divorced. Moreover, in the Jackson case it was made to appear that the deeds to the property involved were obtained by gross fraud and the exercise of undue influence by the donee whose relation to the donor was, as provided in sections 2219 and 2235 of the Civil Code, that of a trustee, facts which the findings herein exclude.

[6] In reply to appellant's contention that, since plaintiff had a legal wife living, he could not give away the

community property, it may be said that, conceding the funds to have been the community property of himself and wife, she is not complaining. However this may be, he has no power to revoke his own gift of community property, for the reason that his wife did not consent to the making of it. As to him, he is as fully bound as though it was his separate estate. (*Spreckels* v. *Spreckels,* 172 Cal. 775, [158 Pac. 537].)

There is no merit in the claim that the findings are contradictory. While following the complaint, which contains a vast deal of surplusage and immaterial matter repeatedly stated and restated, no inconsistency appears in the material findings.

Taking the voluminous record as a whole, it is clear that in arriving at its conclusion the trial court properly excluded the testimony of plaintiff as unworthy of belief and accepted that of defendant as true, thus, in our opinion, reaching a decision which, in the absence of any errors resulting in a miscarriage of justice, is a righteous one.

The judgment is affirmed.

Conrey, P. J., and James, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 6, 1920.

All the Justices concurred.