[Civ. No. 15541. Second Dist., Div. Two. May 12, 1947.]

CECIL A. BURTON et al., Appellants, v. LOS ANGELES RAILWAY CORPORATION (a Corporation) et al., Respondents.

Morris Lavine for Appellants.

Gibson, Dunn & Crutcher and Sherman Welpton, Jr., for Respondents.

MOORE, P. J.—Dissatisfied with both the judgment and the findings plaintiffs bring this appeal from the judgment and the order denying their motion for a new trial. They ask that new findings supplant those of the court below.

Appellants sought damages for the death of their daughter, Dorothy, age five and a half, alleging negligence of respondent Ulmer, a bus driver of respondent corporation. Findings that respondents were free from negligence, that appellants' own negligence directly contributed to their damage, that Dorothy negligently ran in front of the bus and thereby proximately contributed to her death, and that the driver could not avoid the collision by the exercise of ordinary care, are attacked as not supported by the evidence. A résumé of the facts proved at the trial leaves no doubt of the sufficiency of the facts adopted by the trial court.

It was Halloween and spirits walked. Little children were eager, excited, and gay, and their oldsters joined in the merriment. Little Dorothy and her sister Betty, age seven, were enjoying the childish sport of "trick or treat" among the neighbors of the Burtons in the city of Los Angeles. They resided on the north side of 105th Street which is 36 feet in width. While so engaged they visited a home about 250 feet east of the Burton residence and on the south side of the street. Intending to recross the street at about 7:30 p.m. they stood momentarily at the curb beneath the street light and behind a parked automobile headed eastward. They estimated that the bus "had just turned the corner" a block to the east of them. The street was clear; the headlights of the bus glared. Hand in hand, Betty leading, they proceeded to the center of the street, suddenly to discover the bus was bearing down upon them. They started to run. No other traffic was seen by Betty who barely escaped as Dorothy was stricken down and dragged 18 feet. The driver did not see the girls. He was traveling at a speed of from 15 to 20 miles an hour. About five feet before the impact he "got a kind of flash of something in front of the bus," heard a scream and applied his brakes. R. E. Goodwyn sat in his own car across the street from the children facing southward awaiting the arrival of an east bound automobile. As it passed he drove from his property onto the south side of the street and followed the moving automobile to the street light, when Betty and Dorothy suddenly ran in front of the approaching bus as it was not more than five feet from them. Betty testified that she was nervous and did not see the car that preceded Mr. Goodwyn. She "just got out of the way in time" and lost her shoe in the effort. Mrs. Evelyn Griggs was standing on her porch which was near the children as they stood behind the parked automobile. She saw them run toward the bus, Betty pulling Dorothy who was a step behind.

■ It would belabor this report of the instant action merely to list the decisions of California appellate courts holding that it is beyond the province of a reviewing court to interfere with a judgment based upon findings of fact supported by substantial evidence. With such declaration the curtain might be lowered upon this heart rending scene. But such termination would not answer this appeal. Appellants ask more than whether the facts support the findings. They maintain that a fair interpretation of the entire evidence

requires contrary findings and judgment. In so contending they present certain evidence, which the trial court rejected, as though it formed the basis of a finding of respondent's negligence. For example, they emphasize that Betty testified (1) that before stepping into the street they looked in both directions for traffic and observed the bus to be a block away; (2) that when she discovered the vehicle to be nearer "than we thought it was" she noticed that "the driver was looking back talking to a lady." While her first statement is partially corroborated by Mr. Goodwyn the court was not required to find it to be true. The children were engrossed in the pursuit of gleeful play and may not have been normally cautious even for children of their ages. As to her observation of Mr. Ulmer's conversing with a lady as he came near, the events happened with such suddenness that it is highly improbable that even more experienced eyes could have detected the acts of the driver unless the observer had been on the lookout for his behavior. Moreover, the testimony of the only passenger on the bus, who sat a third of the way back from the front, relaxed in her seat, tired from having stood all day and whose view of the driver was obscured by a sort of canvas awning drawn between the driver and the seats of passengers, was that she was not conversing with the operator. Ulmer testified that he was not conscious of the presence of his passenger, that he was not in a hurry, not counting money or listing transfers. It was not unreasonable for the trial court to decide in conformance with the testimony of the two adult witnesses rather than to adopt that of the excited child.

Despite the finding of no negligence on the part of respondents, appellants now cite the statute which forbids a motorist to drive at a speed greater than is reasonable with due regard "for the traffic on, and the surface and width of, the highway, and in no event at a speed which endangers the safety of persons or property." (Veh. Code, § 510.) Nothing indicates that the trial court disregarded such statute or the decisions cited in appellants' brief. Such cases announce a variety of guiding rules which control the trials resulting from collisions of vehicles and pedestrians on the highways as follows:

(1) It is the duty of a motorist to anticipate that he might meet pedestrians or vehicles at any point in the street

and to keep his automobile under such control as will enable him to avoid a collision with persons using ordinary care and precaution. (*Dullanty* v. *Smith*, 203 Cal. 621 [265 P. 814]; *McPherson* v. *Walling*, 58 Cal.App. 563 [209 P. 209]; *Hine* v. *Leppard*, 5 Cal.App.2d 154 [42 P.2d 389, 43 P.2d 595]; *Potter* v. *Driver*, 97 Cal.App. 311, 315 [275 P. 526].)

(2) A greater degree of care is required of a driver when he knows that small children are at play in the immediate vicinity of his vehicle, and it is his duty to see persons on the road in front of him when his view is unobstructed. (*Parra* v. *Cleaver*, 110 Cal.App. 168, 171 [294 P. 6]; *Waterbury* v. *Elysian Springs Water Co.*, 139 Cal.App. 355, 361 [33 P.2d 1048]; *Nichols* v. *Nelson*, 80 Cal.App. 590, 595 [252 P. 739]; *Warner* v. *Bertholf*, 40 Cal.App. 776, 778 [181 P. 808].)

(3) Question as to the capacity of a particular child at the time of an accident to exercise care to avoid a danger is one of fact for the trial court. (*Hunt* v. *Los Angeles Railway Corp.*, 110 Cal.App. 456, 460 [294 P. 745].)

(4) The question of the exercise of due care on the part of a motorist or pedestrian is one of fact to be determined from all the conditions or circumstances of the case. (*McManus* v. *Arnold Taxi Corp.*, 82 Cal.App. 215, 220 [255 P. 755].)

(5) If a person without fault is suddenly put into a situation where a collision is imminent, without sufficient time to consider all the circumstances, he is excusable for omitting some precautions or for making an unwise choice although he should have done otherwise had his mind been free from the disturbing influence. (*Scandalis* v. *Jenny*, 132 Cal.App. 307, 313 [22 P.2d 545].)

A motorist is not obliged to move at a creep nor to stop every rod to search for pedestrians to comply with the rules of ordinary care. Of course the amount of care in driving a bus upon a residential street at night is greater than that required on the open highway or a country road. From the record in the instant case the trial court could reasonably find that the control of the bus was such that a prudent driver could stop before striking a motionless, visible object. But if a child suddenly runs from the cover of an automobile standing at the curb of a narrow street toward the front of an approaching bus traveling at a speed of 15 miles an hour, in either the

artificial light of a street or in the brilliance of a noonday sun, it would require more than reasonable care to avoid a collision.

## New Findings Cannot Be Made

■ Appellants request this court to eliminate the findings of the trial court and to make new findings in the form submitted by them. Such request is based upon three facts: (1) that the court below tried the cause upon the transcript of an earlier trial before a jury presided over by another judge; (2) that section 956a, Code of Civil Procedure, provides that where a jury has been waived the appellate court may make findings contrary to those made by the trial court; and (3) that this court is in as good a position as the trial judge to determine the facts and to draw inferences. In support of such request appellants cite an article in 58 Harvard Law Review by Robert L. Stern entitled, *"Review of Findings of Administrators; Judges and Juries: A comparative Analysis."* The article confessedly deals only with the federal judicial and administrative systems and is not designed as authority for the guidance of a state appellate court in the matter of its rewriting the findings of a trial court. However, if the article should be consulted with reference to the propriety of this court's rewriting the findings in this case we could not set aside the findings unless they were clearly erroneous; and due regard should be given to the fact that the trial court had an opportunity at least equal to that of this court to judge the credibility of witnesses. It is commonplace to say that under the prevailing procedure of this state appellate courts are bound by the findings of the trial court when based upon substantial evidence. They may not set aside findings of the trial court and make other findings even though they opine that the evidence preponderates in favor of appellant. (*Tupman* v. *Haberkern,* 208 Cal. 256 [280 P. 970]; *Isenberg* v. *Sherman,* 212 Cal. 454, 461 [298 P. 1004, 299 P. 528]; 1 Cal.Jur.; 10-Yr.Supp. Appeal and Error, § 588c.) ■ Before the appellate court may make new findings as a basis of reversal and of a new judgment the record must show that upon no reasonable theory could the respondent make a further substantial showing on a new trial in support of his defense. (*Davis* v. *Chipman,* 210 Cal. 609, 623 [293 P. 40].) ■ Moreover, the appellate court may supply findings only in a case in which such action will result in an affirmance of the judgment. (§ 588c, *supra.*)

ο

## FINDINGS NOT INCONSISTENT

 The findings are attacked for their inconsistency. Finding II is that. neither defendant was negligent; finding III, that plaintiffs' negligence in permitting Dorothy to play about the streets without proper supervision "contributed" to their damages; finding IV, that Dorothy so negligently ran in front of the bus that the operator could not avoid a collision by the exercise of ordinary care, and her injuries were "directly, proximately and concurrently caused and contributed to by her own . . . negligence." The point of appellants' attack is that finding II, that Ulmer was not negligent, conflicts with finding III, that the negligence of appellants and of Dorothy "contributed" to the death of the child. There is nothing inconsistent in these expressions of the court's determination of the facts. The use of the word "contributed" might more correctly be used in a "conclusion" in defining the effect of the negligence of appellants and of Dorothy in defeating their right of recovery. If it is used to state the ultimate fact that the negligence of the parents and of Dorothy was partially responsible for the collision, it is the form commonly used to express the court's affirmative determination of a defendant's plea of contributory negligence, customarily alleged by declaring the ultimate fact. While in the case at bar respondents pleaded both the probative facts, encumbered with some legal conclusions, and the ultimate fact of contributory negligence, the findings make appropriate response thereto substantially in the language of the answer. Even though in an action for personal injuries the court should find negligence on the part of the defendant, findings of contributory negligence on the part of plaintiff would not be inconsistent therewith for the reason that however negligent a defendant may be, ·if the plaintiff is also negligent and if his negligence contributed to the accident pleaded recovery is thereby defeated. Findings are to be interpreted as a whole, and if possible so as to uphold the judgment; and unless there is an irreconcilable conflict between the finding of a party's negligence and "the findings as to the particulars upon which appellant relies, the judgment must be affirmed." (*Todd* v. *Orcutt*, 42 Cal.App. 687, 691 [183 P. 963]; *Agdeppa* v. *Glougie*, 71 Cal.App.2d 463, 467 [162 P.2d 944].) The findings herein clearly express the court's deductions from the evidence, namely that defendant Ulmer was not negligent.

The order denying a new trial being nonappealable, the attempted appeal therefrom is dismissed. The judgment and the order denying motion to vacate the judgment are affirmed. Motion to make new findings denied.

McComb, J., and Wilson, J., concurred.

A petition for a rehearing was denied May 29, 1947, and appellants' petition for a hearing by the Supreme Court was denied July 10, 1947. Carter, J., voted for a hearing.