[Civ. No. 3728.   Fourth Dist.   Sept. 22, 1948.]

RAYMOND RONALD HELMER et al., Respondents, v. ARABELLA HELMER, Appellant.

Eckhart A. Thompson, C. Ray Robinson, W. Eugene Craven and Margaret A. Flynn for Appellant.

Harold M. Child and L. N. Barber for Respondents.

GRIFFIN, Acting P. J.—Plaintiff Raymond Ronald Helmer, adopted son of defendant, and his wife, instituted this action alleging generally that on November 4, 1941, they purchased certain described real property in Fresno and paid the purchase price "out of their own money solely," but took title thereto in the names of defendant and her husband, now deceased, as joint tenants; that defendant holds title to the property in trust for them; that although they are in possession of the property, defendant repudiated the said trust and demanded that plaintiffs pay rent for the use and occupancy thereof or deliver possession thereto. Plaintiffs prayed that they be adjudged the owners thereof; that defendant be required to execute a proper deed of conveyance and for other equitable relief.

Defendant answered, denied the allegations made by plaintiffs and alleged that she and her husband purchased the property and took title in their names as joint tenants and that the sum of $2,500 was paid by the answering defendant for the property; that she is now the owner thereof and entitled to its possession. By way of cross-complaint defendant asks that her title be quieted and that plaintiffs pay unpaid rent in the sum of $905, since January 1st, 1942, at the rate of $15 per month during the time plaintiffs occupied the premises, and for treble rents and costs.

It appears from the evidence that plaintiffs and their children were having a financial struggle and that defendant

had been giving them financial assistance off and on. Plaintiff, Georgine Helmer, the daughter-in-law, testified that defendant lived in Merced and she wrote to her to come there; that defendant said: " 'I want to get you folks a home, you children . . . you go back to Fresno and find you a piece of property that has got a home on it,' priced around $2500 and 'then you let me know' and 'I will buy it for you. I will put the money in the bank in Fresno and you buy the property.' She asked me to put it in joint tenancy . . . for the reason . . . my father-in-law . . . knew nothing about this whole proceeding"; and " 'For the reason that you children would probably mortgage it and lose it, and I don't want you to lose it. I want you to have it as your home'; and she said: 'I will get you a home, and then, . . . I don't expect you to have to depend on me for any more help' ' "; that she immediately notified defendant and defendant went to the bank at Merced and had her money transferred to the Fresno bank "and on this check, as near as I can remember, it was a check. It might have been a certified bank check or what, I can't tell you that. On the left-hand corner was marked 'a gift.' ' " It was deposited in the Security-First National Bank of Fresno to a joint account with Mrs. Helmer. On November 3, 1941, Georgine drew a check on the joint account for $50 in favor of the real estate agent. She later drew a $2,500 check on that account and deposited it with the escrow company. The deeds and insurance policies were mailed to defendant. Plaintiffs moved onto the property. Georgine then testified that about a year after that time defendant phoned her and stated that she was afraid that her husband would find out that she had given plaintiffs the property and that she was going to send them a copy of a rent bill; to pay no attention to it because she was only doing it to show her husband that they were paying rent. A copy of a rent bill was received in evidence and was a statement for rent from January 1, 1942, to March 1, 1942, totaling $30, less a credit of $10 for laundry done for defendant. She then testified that she never paid any rent and no demand for further rent was ever made; that plaintiffs improved the property by installation of a pressure system pump at a cost of $375, and also built a pump house, barn, chicken house and made other similar improvements to the place; that defendant told her when she wrote out the checks for the place and moved in that "whatever you put onto this place is yours. It is your home. I want to leave it this way. As soon as Papa passes away I will deed it to you but I can't do it

now because he will find it out, and there will be trouble"; that plaintiffs never paid taxes or insurance on the property excepting one payment of $6.75; that Ronald asked defendant to place title in his name so he could claim his service tax exemption but she refused.

Ronald testified that his mother looked at the property here involved prior to its purchase and she told him that she was buying the home for plaintiffs; that he wanted to improve the place and she said: "You go ahead . . . improve this place, do anything you want with it, because it is yours, and yours to have and to keep"; that he later went into the service and when he came out he asked her to put the property in his name on account of the tax exemption; that she refused because she was afraid he would mortgage it and be out of a home; that he had nothing to do with the checking or escrow transaction and that he did not see or talk to his mother from December, 1942, until July 24, 1945.

Defendant testified generally that she was the mother of two adopted boys; that Ronald made continuous demands on her for money; that that displeased his father, who was in poor health; that when Ronald's wife approached her, telling her that she and her two children were being evicted from the home which they were renting, she said she wished "she had a place of her own"; that she told her that she (defendant) would try to get one for her but not to ask for money; that she could live there and pay a little rent and the taxes; that she had a little money in the Merced bank remaining from her father's estate and she had it transferred to a bank in Fresno to an account carried in the names of herself and plaintiff Georgine, as joint tenants "so she could draw her money"; that after Georgine found a place she transferred $2,600 to that account; that she received a receipt from that bank showing the transfer. This receipt is in evidence dated December 3, 1941, and shows a deposit to the account of Arabella H. Helmer.

The evidence is confusing as to whether defendant had a personal account with the Fresno bank prior to the time the joint account was established.

Defendant testified that she did establish a joint account with Georgine about that time, either before or just after the transfer; that Georgine opened the joint account and sent the card to her for her signature; that Georgine drew on the joint account to pay for the property and the additional

escrow charges; that plaintiffs were sent bills each month for rent then due and the request to pay it. Plaintiffs denied receiving such bills. Copies of these claimed bills thus sent were received in evidence. It was stipulated that defendant paid all taxes on the property excepting $6.75, and also all insurance. Witnesses were produced by defendant indicating that bills were received by plaintiffs from defendant and that plaintiffs referred to the fact that they received a bill for rent "from the old lady." On January 7, 1943, while Ronald was in the service, he wrote a very discourteous letter to his mother indicating great bitterness on his part and denoting some jealousy between himself and his adopted brother regarding money matters and pertaining to defendant's claim for rent. He therein stated: "The place was ours . . . that was a gift." One witness overheard a conversation between Georgine and defendant about the time the property was to be purchased and testified that defendant told Georgine that "she would buy her a home so that the children would not be in jail"; that she told her "If I buy you a home you will have to pay some small amount of rent" and taxes and if "anything happens to me, Papa will have to sell the home to take care of him"; that subsequently plaintiffs wanted money for another car and she heard defendant tell them: "Well, dear, you know you have never paid me any money back, and you know you have never paid me a dime on the rent." A letter to defendant, dated April 25, 1946, admittedly written by Georgine, was received in evidence. It recites that a real estate man had called at her home, apparently at the suggestion of defendant, in regard to the sale of the place. She therein stated: "I would like to, or rather Ronald and I would rather pay you for the place. Then everything would be clear. If it is possible, could you drop us a line, or better still, come down and see us so we can make arrangements. I realize you feel ill towards us and am very sorry this has happened . . . Mother, please write to me so we can make a settlement on this place, as I know you have been out on it for taxes and insurance, and you reap nothing, so could it be that we could pay you for it? I mean to make it a cash basis, and think it best we do it this way." Through plaintiffs' attorney, they offered to pay $4,000 for the property and they also attempted to negotiate a loan. The reason for the loan was stated to be "to give her back what she gave to me. She gave it to me once, and then she called back and wanted it back. So I figured rather than have her keep going

on and on, and begging and saying she had done that, after she had given it to us, I figured we would borrow the money and pay her off and forget it."

Upon this evidence the trial court found that the legal title to the real property described was acquired by defendant under the name of Arabella H. Helmer; that the consideration was paid by the plaintiffs; that the defendant at all times held the legal title in trust for the use and benefit of the plaintiffs and for the purpose of conveying the title to them on demand. Judgment was entered accordingly. A motion for new trial, on all statutory grounds including newly discovered evidence, was denied.

It is defendant's argument that this is not a case where the consideration for the purchase of property was paid by one party and title thereto taken in the name of another; that there is no conflict in the evidence in respect to the origin of the purchase price; that plaintiffs admitted that defendant furnished the funds with which the property was purchased; and that the title to the property was taken in the name of that party; that under the well-established rules, where the party who furnishes the consideration for the purchase of real property takes legal title thereto in her own name, no resulting trust can be imposed in favor of another; and that the trial court's finding that a trust resulted cannot be afforded legal sanction under the evidence.

As to this general rule of law there can be no dispute. (*G. R. Holcomb Estate Co.* v. *Burke,* 4 Cal.2d 289, 299 [48 P.2d 669]; *Treager* v. *Friedman,* 79 Cal.App.2d 151 [179 P.2d 387]; *Los Angeles etc. Co.* v. *Occidental Oil Co.,* 144 Cal. 528, 533 [78 P. 25].)

Plaintiffs do not dispute the rule stated and concede that the money used to purchase the property came originally from defendant. They argue that there is evidence showing that defendant made a previous gift of the money to plaintiffs and their title to that money was just as unassailable as if they had saved it from their earnings or had borrowed it, and therefore at the time of purchase it was plaintiffs' money; that when they paid the purchase price with their money, a presumption of a resulting trust arose, even though title to the property was taken in the name of defendant (citing 25 Cal.Jur. § 53, p. 185; *Watson* v. *Poore,* 18 Cal.2d 302 [115 P.2d 478]; Restatement of the Law of Trusts, § 450, p. 1369, coma.; *Dahne* v. *Dahne,* 49 Cal.App. 501 [193 P. 785]).

It should be here noted that after this appeal was perfected defendant made application to this court and it ordered that the trial judge take additional evidence pertaining to the check transaction. An employee of the Fresno bank produced the record of the joint account and the ledger sheet. Copies were received in evidence. He testified that there was no account located in his search other than the joint account of Georgine and defendant; that there was a deposit made in the joint account on November 3, 1941, for $2,600. The ledger account so indicates. A letter dated November 1st, 1941, from the bank in Merced to the Fresno bank requests that the Fresno bank credit the commercial account of Arabella H. Helmer with $2,600 and charge the bank's account with that amount. He then testified that that sum was taken from defendant's savings account in Merced. The purpose of this testimony, as we understand it, was to affirmatively show that defendant never did give a check payable to Georgine Helmer for $2,600, on her personal account, on which was inscribed the words ''a gift'' as indicated by her. This evidence does impeach plaintiff's testimony in this respect. An appellate court is not authorized under section 956a of the Code of Civil Procedure to pass upon the credibility of a witness who testified at the trial.

In *Leal* v. *Leal,* 206 Cal. 513 [274 P. 965], it was held that that section was not intended to have application to cases wherein the production of original evidence was sought to be permitted in an appellate court and the purpose of its production was to lead to a reversal of the cause on appeal and for the entry of a different judgment. See, *Tupman* v. *Haberkern,* 208 Cal. 256 [280 P. 970], where the purpose of allowing additional evidence in a reviewing court is fully discussed. To the same effect is *Davis* v. *Chipman,* 210 Cal. 609, 623 [293 P. 40]. The evidence here produced merely added to the conflict in the evidence on the question of whether the money was in fact a gift to plaintiffs. Under these circumstances this court may not set aside the trial court's findings and make other findings even though we may be convinced that the evidence preponderates in favor of appellant. (*Burton* v. *Los Angeles Ry. Corp.,* 79 Cal.App.2d 605 [180 P.2d 367].)

Counsel for plaintiffs now argue that notwithstanding the additional evidence produced in opposition to plaintiffs' testimony may be correct, there still remains sufficient evidence of a gift of the money to plaintiffs. Under the contract

creating the joint tenancy bank account between defendant and Georgine and the placing of the money in that account by defendant and the withdrawal thereof by Georgine, with the full knowledge of the other joint tenant, there arises a presumption of a gift. (*Wheeland* v. *Rodgers,* 20 Cal.2d 218 [124 P.2d 816]; *Estate of Gaines,* 15 Cal.2d 255 [100 P.2d 1055]; California Bank Act, § 15a [Stats. 1921, p. 1367, as amended; 1 Deering's Gen. Laws, Act 652, § 15a]; *Kennedy* v. *McMurray,* 169 Cal. 287 [146 P. 647, Ann.Cas. 1916D 515]; *Klindera* v. *Smith,* 15 Cal.App.2d 115 [59 P.2d 156].)

The testimony of both parties in this action was to the effect that they signed papers for the purpose of opening the joint account. Defendant understood this transaction, authorized and knew that Georgine was to draw the $2,500 for the purpose of purchasing the property. There is additional evidence, apparently believed by the trial court, that defendant intended to make a gift of that particular amount of money to plaintiffs. The evidence, though conflicting, likewise justified the conclusion drawn by the trial court that defendant held title to the real property for the benefit of plaintiffs, and that since plaintiff Georgine Helmer paid the purchase price with money that was given to them, a presumption of a resulting trust arose. These two presumptions above referred to are evidence. (*Smellie* v. *Southern Pacific Co.,* 212 Cal. 540 [299 P. 529]; *Bliss* v. *Martin,* 74 Cal.App.2d 500, 516 [169 P.2d 61].) The trial judge did not believe that the testimony of the defendant did overcome these presumptions and outweigh the evidence supporting them.

From the testimony produced, as reflected by the cold record, we might hesitate in making the finding indicated by the trial court. However, we are not the trial judge. Our provinces are separate and distinct. He was the trier of fact and was otherwise impressed. It cannot be said that his finding lacks evidentiary support.

Judgment affirmed.

Mussell, J., concurred.

A petition for a rehearing was denied October 11, 1948. Barnard, P. J., voted for a rehearing. Appellant's petition for a hearing by the Supreme Court was denied November 18, 1948.