[Civ. No. 20677.   First Dist., Div. Three.   Sept. 5, 1963.]

WALTER W. BRIDGE, Plaintiff and Respondent, v. EVELYN M. ALMACK, Defendant and Appellant.

Murphy & Adams and George A. Strong for Defendant and Appellant.

Burd, Hunt & Quantz, Peter Hunt and Herbert J. Friedman for Plaintiff and Respondent.

SALSMAN, J.—The respondent brought this action for declaratory relief seeking a declaration of his right to water flowing through a pipeline from a source known as the Church Hill Spring. The pipeline served respondent's lands, purchased from appellant and her husband in 1953, and also serviced lands retained by appellant after the sale of a portion of her lands to respondent. The trial court found that appellant's deed to respondent, dated January 12, 1953, carried with it, as a right appurtenant to the grant, a right to receive one-half of the water flowing from the Church Hill Spring through the pipeline. This appeal followed.

The basic difference between the parties to this litigation relates only to the extent of respondent's right to receive water through the pipeline from the Church Hill Spring. It is appellant's contention that respondent is entitled only to the overflow after the water has entered appellant's tank and her needs have been satisfied; it is respondent's contention that he is entitled to one-half of the water flowing through the pipeline.

At trial there was evidence that in 1950 appellant and her husband purchased a tract of land consisting of 85 acres near San Gregorio, in San Mateo County. The Church Hill Spring site was located on the land, and there were also four houses on the land. The pipeline ran from the spring site to two tanks. The tanks were equal in size and capacity. Water

was taken from the tanks for use in each of the dwellings.

In January 1953 appellant and her husband deeded 71 acres to respondent, and retained the remainder of the land. After this conveyance two of the houses were on land owned by appellant, and two on the land owned by respondent.

The mechanical method by which the water from the pipeline was made to enter the two tanks determined its division between the parties. Thus, at one time, a method involving the use of a "riser" was installed on the line. With this method, the water first emptied into appellant's tank and after it had filled, the flow from the pipeline was then lifted above the riser, and went on into respondent's tank. The use of this method quite obviously gave the respondent's tank only the overflow from appellant's tank. A second method of receiving the water from the pipeline involved the use of a simple "T" connection at the end of the line, with pipes attached to the "T" running to each of the tanks. Thus, while the "T" was maintained on a level or horizontal plane, the water from the pipeline would divide itself equally and half would flow into each tank.

The evidence is in sharp conflict concerning the means by which water entered the tanks at the time respondent purchased his land. Appellant testified that, after purchase of the 85 acres by her husband in 1950 and until the sale of the 71 acres to respondent in January 1953, she visited the premises on at least five occasions, and during this time the piping system remained the same. She again visited the property in October 1953 after the death of her husband and the piping system was the same as it had been in 1950. She further testified that under the piping system in effect during that time, respondent's water was received by him from the top of appellant's tank by a system of overflow. Respondent, on the other hand, testified that he examined the tanks and piping system about one week after his purchase in January 1953. At that time a "T" system was in use, and the effect of it was to divide the water equally.

During the summer of 1953 respondent called at appellant's home to discuss the division of water from the Church Hill Spring, but appellant's husband was ill and could not see respondent. Respondent then wrote a letter to appellant's husband concerning the division of the water. This letter was not produced at trial. After the trial court made its findings and entered its judgment, in effect determining that the water from the pipeline should be divided equally, and while this

appeal was pending, appellant discovered the letter among the personal papers of her deceased husband. The letter is dated June 30, 1953 and reads thus: ''Dear Mr. Almack: In regard to the division of domestic water coming from the spring on 'Church Hill' at San Gregorio—it is my understanding that it has legally been divided into five shares—(1) that which Mr. Mecchi obtained from the Quilicis (2) that which I purchased from Mr. and Mrs. Quilici (3) that which the Quilicis retained for themselves (4) that which the Quilicis retained for the Alves house (5) that which went to the property that I purchased from you. If the foregoing is correct then I would like to bring to your attention the fact that my water tank has not been getting any spring water for three weeks, and my tenant has had to purchase domestic water. With the present piping system only the overflow from your tank flows on to mine. I believe that with a slight change in the piping the water can be made to divide equally between your tank and mine whereupon I shall put a float valve on my tank to prevent wastage. Thus the part of my half not used will flow into your tank. The pencil diagram[1] shows the present piping arrangement showing how the water must flow over a riser to get to my tank. The proposed modification will automatically divide the water equally. If this solution is acceptable, please let me know and I will make the modifications to the piping and place a float valve cutoff on my tank. Sincerely, Walter W. Bridge P. O. Box 4850, S.F.''

Pursuant to rule 23, California Rules of Court,* appellant asked leave to produce additional evidence. Respondent did not object and by stipulation we received the quoted letter in evidence and it is before us for consideration in the disposition of this appeal.

Appellant attacks the trial court's judgment on the ground that the evidence, considered in light of respondent's letter of June 30, 1953, does not support the finding that the waters from the Church Hill Spring were to be divided equally. She construes the letter as an admission on respondent's part that, at the time of his purchase, his tank was receiving only the overflow from her tank and that the letter amounts to an appeal for an equal division of the water. Appellant asks us

---

[1]The diagram referred to is not reproduced here. It illustrated the two methods, previously explained, by which water entered the tanks, that is, first by means of the ''riser'' by which respondent received only the overflow, and second by means of the ''T'' arrangement by which the water was made to divide equally between the two tanks.

*Formerly Rules on Appeal, rule 23.

to find from the evidence before the trial court, augmented by the new evidence we have received here, that the deed of January 12, 1953, from appellant to respondent carried with it the right to receive only the overflow from appellant's tank and to modify the trial court's judgment and affirm the judgment as thus modified. In the alternative, appellant asks us to reverse the judgment and order retrial upon the issue of the extent of the implied grant pursuant to appellant's deed of January 12, 1953. Appellant's contention requires us to consider our authority to weigh the new evidence, to make new and different findings in the case, and to direct the trial court to enter a judgment contrary to the judgment previously entered.

The authority of an appellate court to take additional evidence, to make findings contrary to those made by the trial court, and to direct entry of such judgment as the case may require stems from article VI, section 4¾, of the California Constitution, implemented by section 956a of the Code of Civil Procedure and rule 23(b), California Rules of Court.* All of these provisions were carefully reviewed and interpreted in *Tupman* v. *Haberkern*, 208 Cal. 256, 269 [280 P. 970]. It was there said: ". . . it was not the intention of the new law that the reviewing courts should develop generally into trial courts; that it was contemplated that the courts of appellate jurisdiction would exercise the new power sparingly and, as a general rule, would exercise it only when the purpose of the new findings was to constitute a basis for an affirmance of the judgment or a basis for a reversal of the judgment with directions to the trial court to enter a judgment for the appellant. . . . if new findings be made as a basis of a reversal, with directions to the trial court to enter a judgment for the appellant, it must appear from the record or from the new evidence taken that on no theory grounded in reason and justice could the party defeated on appeal make a further substantial showing in the trial court in support of his cause."

Although couched in language which suggests a mere modification of the judgment, appellant's request is in effect that the judgment be reversed and that the trial court be directed to enter judgment in favor of appellant. This is so because at trial the issue was the extent of respondent's right to water from the Church Hill Spring, respondent contending he had a right to one-half of the water and appellant con-

---

*Formerly Rules on Appeal, rule 23(b).

tending respondent's right was only to the overflow. The trial court found that respondent had a right to share the water equally with appellant. If we were now to find on the basis of the new evidence that respondent is entitled only to the excess water or overflow from appellant's tank, it seems plain that the trial court's judgment would not be modified and affirmed, but entirely reversed. To justify such a finding the new evidence must be, as stated in *Tupman* v. *Haberkern, supra,* such that on no theory could respondent make a further substantial showing in the trial court in support of his cause. The new evidence which we have before us cannot be given such effect, nor can it support the judgment for which appellant contends. All that may rightfully be said of respondent's letter of June 30, 1953, is that it adds to the conflicting evidence. It is true that it says ''With the present piping system only the overflow from your tank flows on to mine,'' but the letter must be taken to speak as of its date, namely, June 30, 1953, six months after respondent's purchase, and it does not contradict respondent's oral testimony that one week after his purchase a ''T'' system was in use on the line. Moreover, in the letter, respondent does refer to ''my half'' of the water in question, which might be interpreted, under all the evidence, as an assertion on his part that he was entitled to half of the water as a matter of right. It seems apparent that we cannot give to the letter the conclusive effect for which appellant contends; it is merely cumulative of the conflicting evidence already in the record, and under such circumstances the judgment must be affirmed. (*Estate of Schluttig,* 36 Cal.2d 416, 423 [224 P.2d 695]; *Helmer* v. *Helmer,* 87 Cal.App.2d 682, 688 [197 P.2d 558]; 3 Witkin, Cal. Procedure, p. 2399.)

The judgment is affirmed.

Draper, P. J., and Devine, J., concurred.